[Civ. No. 8549. Fourth Dist., Div. One. July 14, 1967.]

ROSE M. MYERS, Plaintiff and Respondent, v. NATIONAL
AUTOMOBILE AND CASUALTY INSURANCE COM-
PANY, Defendant and Appellant; CIVIL SERVICE
EMPLOYEES INSURANCE COMPANY, Defendant
and Respondent.

Donald H. Foster and Ross Willson for Defendant and
Appellant.

No appearance for Plaintiff and Respondent.

Luce, Forward, Hamilton & Scripps and Gerald S. Davee for Defendant and Respondent.

WHELAN, J.—Defendant National Automobile & Casualty Company (National) appeals from an adverse judgment in an action for declaratory relief.

The plaintiff sought a declaratory judgment as to which of the two defendant insurance companies was obligated to furnish insurance benefits to her because of damage suffered by her from an uninsured motorist. The decree placed the obligation upon National rather than its co-defendant Civil Service Employees Insurance Company (Civil Service).

Plaintiff suffered injury on May 22, 1965 while a passenger in a vehicle owned and operated by Louis McCall.

The injury resulted from collision with a vehicle which was and whose owner and operator was uninsured.

National had issued a policy to plaintiff providing uninsured motorist coverage for plaintiff if there were no other such coverage available to her when she was riding as a passenger in a non-owned vehicle.

McCall had an automobile insurance policy covering his vehicle issued by Civil Service during April 1965.

He had changed his insurer from another company in the hope of paying a lesser premium. In his discussion with Civil Service's agent before contracting for the insurance, McCall told the agent he "wanted to be sure" he had proper coverage with public liability insurance, and collision and medical payments; with regard to uninsured motorist coverage, McCall "decided it wasn't worth the premium to pay that extra"; he told the agent, "No, we will skip that part of it."·

The agent compared with McCall "the coverage that he had on his previous policy and arrived at the items which he wanted, and [the agent] also gave him the amounts of cost for each item of coverage." Concerning uninsured motorist coverage, the agent explained that: ". . . there were two factors in this particular area that makes this ideal coverage. One is the proximity to Mexico and the other is the great number of military personnel in this area, both factors being somewhat thought of as not too concerned with insurance and financial responsibility."

After the discussion with the agent, McCall signed a written form of application for insurance which had been typed up and mailed to him. On the form were the letters ''UM'' which McCall at the time understood to mean ''uninsured motorist.'' Following those printed letters, the word ''nil'' was then inserted. McCall at the time understood from the use of the word ''nil'' that: ''I wasn't being charged for uninsured motorist and therefore I wasn't covered by that.''

McCall paid a premium that did not include the cost of uninsured motorist coverage. The premium schedule was broken down so as to show the charge for each type of coverage. He received a declaration that he was insured with certain coverages set out and the amount thereof; no amount was included for uninsured motorist coverage. McCall examined the document when he received it, saw that no amount of coverage for uninsured motorist insurance was included, and understood that he was not receiving such coverage and was not being charged for it. McCall received also a booklet which contained the general conditions of the policy, definitions and statements as to the types of coverage available, among which was the uninsured motorist coverage.

Subsequently McCall requested that two additonal types of coverage, including uninsured motorist, be added to his policy.

Civil Service's agent obtained McCall's signature to a document dated February 15, 1966, reading: ''The insurer and the insured, for himself and on behalf of any other person who might have otherwise be [sic] benefited, waived application of the provision coverage damage caused by an uninsured motor vehicle under this policy, including any amendment thereto and renewal or extension thereof.

''The signing of this waiver is merely an acknowledgment that Uninsured Motorist coverage was waived from 4/20/65 until 6/9/65, at which time it was added to the policy (No. 04-14835-67-8), at the request of the insured.''

### FINDINGS

The judgment is based upon findings which in part are as follows: ''5. The Court finds that defendant CIVIL SERVICE EMPLOYEES INSURANCE COMPANY issued a policy of automobile insurance (#04-1-4835-67-8), to Louis McCall for the period including May 22, 1965 under which policy Uninsured

Motorist protection was deleted by agreement in writing between the insurer and the insured and no premium was collected for that coverage.

"6. The Court finds that Louis McCall understood the type of protection afforded by Uninsured Motorist insurance before signing his application and ordering and receiving his policy of automobile insurance from CIVIL SERVICE EMPLOYEES INSURANCE COMPANY.

"7. The Court finds that Louis McCall voluntarily and knowingly intended to and did inform CIVIL SERVICE EMPLOYEES INSURANCE COMPANY through its agent, Voyd Beights, that he did not want Uninsured Motorist protection in his automobile policy at the time he applied for his CIVIL SERVICE EMPLOYEES automobile insurance coverage.

"8. That CIVIL SERVICE EMPLOYEES INSURANCE COMPANY issued its policy (#04-1-4835-67-8) of automobile insurance to Louis McCall which did not include Uninsured Motorist protection."

### ISSUES ON APPEAL

National states the issues on appeal as follows:

"1. Did the Civil Service Employees Insurance Co's. insured comply with Insurance Code Section 11580.2 (a) by waiving or deleting the provision for Uninsured Motorist coverage, by an agreement in writing before the automobile accident involved?

"2. Did the waiver agreement signed by the Civil Service Employees Insurance Co.'s insured, which was signed nine months after the automobile accident, relate back to the time of the accident, to constitute a waiver of Uninsured Motorist coverage in compliance with Section 11580.2(a) of the Insurance Code?"

The answer to the first question makes it unnecessary to consider the second question posed by National. The initial and perhaps determinative question is whether the quoted findings of the court are supported by substantial evidence that McCall, in his written application for insurance, waived his right to obtain and have uninsured motorist coverage.

 When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Grainger* v. *Antoyan,* 48 Cal.2d 805, 807 [313 P.2d 848].)

When Civil Service issued its policy in April 1965, section 11580.2, Insurance Code provided in part as follows:

"No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this State to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle then principally used or principally garaged in this State, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code insuring the insured, his heirs, or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. The insurer and any named insured may by agreement in writing delete the provision covering damage caused by an uninsured motor vehicle. Such deletion by any named insured shall be binding upon every insured to whom such policy or endorsement provisions apply."

National argues in effect that the agreement to delete the uninsured motorist provision can be made only after a policy has been issued providing for the coverage.

Webster's New International Dictionary (2d ed.) gives these definitions of "delete": "to obliterate or blot out; erase, expunge; dele." "Dele" is defined as meaning "To erase; cancel; delete; mark for omission."

It would be strained construction of the statute to hold that an applicant for insurance could not voluntarily and understandingly in his written application "mark for omission" this provision of a policy, the deletion of which is permitted by law. Whether he has done so is a matter of fact.

Here, there is no dispute between the insurer and the person to whom the policy was issued as to what the provisions of the policy were to be. The evidence is clear and convincing that both intended and understood that the uninsured motorist provision was to be deleted; and that such intention was expressed in the written application. There is substantial evidence to support the findings of the court.

The following cases cited by National do not compel a contrary holding in this case: *Aetna Cas. & Surety Co.* v. *Superior Court,* 233 Cal.App.2d 333 [43 Cal.Rptr. 476]; *Eli-*

*opulos* v. *North River Ins. Co.*, 219 Cal.App.2d 845 [33 Cal. Rptr. 449] ; *Hendricks* v. *Meritplan Ins. Co.*, 205 Cal.App.2d 133 [22 Cal.Rptr. 682] ; *Mission Ins. Co.* v. *Brown,* 63 Cal.2d 508 [47 Cal.Rptr. 363, 407 P.2d 275] ; *Wildman* v. *Government Emp. Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359].

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.