[Civ. No. 26264.  First Dist., Div. Four.  Dec. 30, 1969.]

STEVE E. BOHLERT et al., Plaintiffs and Appellants, v.
SPARTAN INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Garry, Dreyfus, McTernan & Brotsky, Allan Brotsky and Donald L. A. Kerson for Plaintiffs and Appellants.

Walcom & Harmon and John T. Harmon for Defendant and Respondent.

## OPINION

**RATTIGAN, J.**—Steve E. Bohlert, the insured under a motor vehicle liability insurance policy issued by Spartan Insurance Company ("Spartan") petitioned the superior court for an order requiring Spartan to arbitrate a claim asserted by him "under the uninsured motorist provisions of said policy." After a nonjury trial of the issues joined upon the petition and Spartan's answer, the trial court found in Spartan's favor and entered judgment denying relief. The sole question presented on Bohlert's appeal is whether the liability policy did, or not, provide uninsured motorist coverage.

Because they are alleged and admitted in the pleadings or shown by uncontradicted evidence, the following facts are not disputed: Bohlert visited James F. Munroe, Spartan's agent, at Munroe's place of business. He asked Munroe about liability insurance coverage for his (Bohlert's) motorcycle. Munroe filled out a Spartan application form. Bohlert signed the form and paid for the policy, which thereafter covered him and his motorcycle in terms of his liability to others. This transaction took place on July 16, 1966. Bohlert was injured by an uninsured motorist on August 10, 1966. The liability policy purchased on July 16 patently excluded uninsured motorist coverage, but it was not physically delivered to Bohlert until after he had been injured.

The significant evidence which remains (and which we necessarily examine in close detail) includes the Spartan application form completed on July 16, 1966, and the testimony of Bohlert and Munroe (received in the form of written declarations by both[1]) concerning their transaction on that date. A photographic reproduction of the application follows:

---

[1]Their testimony was apparently limited to written declarations because of the statutory requirement, applicable to this proceeding, that it "be heard in a summary way in the manner . . . provided by law for the making and hearing of motions . . . ." (Code Civ. Proc., § 1290.2. See *id.*, §§ 1003-1004, 1010; see also 2 Witkin, Cal. Procedure (1954) Proceedings Without Trial, § 10, par. [2], p. 1648.)

**URITAN
ACIFIC
NSURANCE**

P. O. BOX 4407
SACRAMENTO
922-8391

### APPLICATION FOR MOTOR-DRIVEN CYCLES

PLEASE PRINT ALL INFORMATION

Insured __STEVE E. BOHLERT__

Address __436 CENTRAL__

City __SAN FRANCISCO__ State __CALIF__

REQUESTED POLICY PERIOD ( __12__ mos.)

From __7-16-66__ To __7-16-67__

LOSS PAYEE: _____

COVERAGE BOUND DATE OF POSTMARK
ON ENVELOPE ENCLOSING THIS APPLICATION

ADDRESS _____

| LIST ALL DRIVERS BY NAME (First–Middle–Last) APPLICANT | DRIVER LIC. NO. | STATE | AGE | OCCUPATION | % of DRIVIN |
|---|---|---|---|---|---|
| STEVE E. BOHLERT | TO BE OBTAINED UPON RECEIPT OF POLICY – POLICY REQUIRED BEFORE DMV WILL ISSUE PERMIT | | 19 | XXXXXXXXX Postal Clerk | 100% |

#### FULL DESCRIPTION OF MOTORCYCLE AND SALES CONTRACT

| Year | Make and Model | I. D. Number | Cu. In. or CC | Purchase Date | Sales Price or ACV | Total Down Payment |
|---|---|---|---|---|---|---|
| 57 | BMW | 557680 | .500 cc. | June 22-66 | $350. | Cash |

SPECIAL PACKAGES
$10/20,000 B. I. – $5,000 P. D.
$50 Deduct. Fire, Theft & Coll.

| | |
|---|---|
| 0 – 100 cc = $57.00 | ☐ |
| 101 – 160 cc = 89.00 | ☐ |
| 161 – 250 cc = 99.00 | ☐ |

COVERAGES : $10,000 / 20,000 – 5,000   ANNUAL PREMIUMS   |   PREMIUM

☑ **LIABILITY**
B. I. & P. D.

| | |
|---|---|
| 0 – 100 cc = $ 31 | 351 – 500 cc = $ 62 |
| 101 – 250 cc = 38 | Over 500 cc = 72 |
| 251 – 350 cc = 42 | |

$ __52.__

☐ **UNINSURED MOTORIST**
Written with Liability Only

ANNUAL PREMIUM $25 :

If not desired
Sign waiver below

$

☐ **Financial Responsibility**
File SR 27A and charge $20

$ __20.—__

☐ **MATERIAL DAMAGE:**   $50 Deduct. Fire, Theft & Collision
(0 – 800 Values include $50 Deduct. V.S.I.)

| VALUES | 0 – 100cc | 101 – 250cc | 251 – 350cc | VALUES | 351 – 500cc | Over 500cc |
|---|---|---|---|---|---|---|
| $200 | 40 | 55 | 60 | $800 | 130 | 135 |
| 300 | 46 | 63 | 68 | 900 | 140 | 145 |
| 400 | 58 | 70 | 76 | 1000 | 150 | 155 |
| 500 | – | 77 | 84 | 1100 | 160 | 165 |
| 600 | – | 84 | 92 | 1200 | 170 | 175 |
| 700 | – | 91 | 100 | 1300 | 180 | 185 |
| | | | | 1400 | 190 | 195 |

FOR EACH ADDITIONAL $100 VALUE, ADD $10

$

☐ $50 Deduct. Fire, Theft & $100 Deduct Collision:  8% of value  $_____   $

☐ V.S.I. including Conversion, Secretion & Embezzlement – $25 Deduct., $10 / Year   $

**SAVE MONEY!!**   Sub-Total   $

BUY BOTH LIABILITY & MATERIAL DAMAGE & SUBTRACT $10 HERE ———→ $ –
(Does not apply to Package Policies)
All Policies include $10 Minimum Annual Premium

TOTAL COST   $ __82.—__

The applicant hereby agrees with the company that the coverage of "Family Protection" (Uninsured Motorists) is excluded from the policy and that the policy shall afford no coverage for damage caused by an uninsured motor vehicle or included under provisions of Section 11580.2 of the California Insurance Code.

X __Steve E. Bohlert__
SIGNATURE OF APPLICANT

Broker/Agent: _____

Address: __471 Valencia__
__San Francisco__

Broker License or Agent Code No.: _____

Date: __7-16-66__  Pacific Ins

-3-

REV. (9) 3/1'66

Bohlert testified in substance that: He was 19 years old on July 16, 1966 (as the application shows, *supra*), and had never applied for any type of insurance before consulting Munroe on that date. Munroe asked him for certain identifying information and said that the coverage he wanted would cost $82. Bohlert gave the requested information and paid the $82, whereupon Monroe filled out the application form and told Bohlert to sign it where an "X" had been marked. Bohlert signed, but was not told to read the form, did not read it before signing, was not given an opportunity to read it and did not receive a copy of it. He did not tell Munroe that he did not want uninsured motorist coverage; the subject was never discussed, and Bohlert did not know that he was "waiving" such coverage when he signed the form.

Munroe's pertinent testimony may be analyzed in four parts, which we quote or paraphrase as follows: (1) "Bohlert told me that he needed liability insurance so that he could obtain his driver's license from the Department of Motor Vehicles. . . . that he wanted to pay the absolute minimum for insurance and that he merely wanted to satisfy the minimum state [financial responsibility] requirements . . . so as to get his license." (2) "I completed an application form based on the information related to me by Bohlert that he wanted minimum coverage at minimum cost, and I told him what the minimum or least coverage was, that is, what coverage he would get, and the premium therefor." In part (3), Munroe described his computation of the total premium charges at $82, which did not include a $25 charge for uninsured motorist coverage. In part (4), he stated that it was his practice to have an insurance customer sign the form only when the customer had indicated that the coverage was not wanted, and that he had Bohlert sign "[i]n view of the fact that . . . [he] . . . wanted no coverage over the necessary to meet minimum State requirements and wanted no additional coverage that would increase his premium." The matters covered in parts (3) and (4) were apparently not communicated to Bohlert.

Bohlert requested various special findings of fact pertaining to the events of July 16, 1966, and his understanding—or lack of understanding—of the language he signed on the application form.[2] The trial court rejected this request and found (1) that Spartan "issued" the policy to Bohlert on that date and (2) that on the same date the parties "by an agree-

[2]As pertinent here, he asked the trial court to find (1) that neither he nor Munroe discussed uninsured motorist coverage on July 16, 1966, (2) that neither of them offered to delete such coverage from the policy, (3) that Bohlert was not told, and did not know, that the form he signed was an agreement to delete the coverage from the policy, (4) that he did not agree to delete it, (5) that he did not "indicate" to Munroe that he did not want the coverage, and (6) that he was not told to read the form before signing, and had no opportunity to read it.

ment in writing excluded Uninsured Motorists Coverage from said policy . . ." Under "Conclusions of Law" the court stated that "no arbitrable question is presented under the terms of . . . [the policy] . . . and that . . . [Bohlert is] . . . not entitled to arbitration of any Uninsured Motorists claim under said policy." Judgment in Spartan's favor followed.

In the absence of an "agreement in writing" which deletes uninsured motorist coverage as permitted by the controlling statute (Ins. Code, § 11580.2, subd. (a)[3]), a motor vehicle liability policy provides the coverage by operation of law (*Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333, 336 [43 Cal.Rptr. 476]), irrespective of whether or not the insurer charges a premium for it. (*Eliopulos* v. *North River Ins. Co.* (1963) 219 Cal.App.2d 845, 850 [33 Cal.Rptr. 449].) The question on appeal, therefore, is whether the trial court's above-quoted finding relative to an "agreement in writing" supports the conclusion of law—not expressly stated, but implied—that the agreement excluded uninsured motorist coverage.

Only an agreement in writing which amounts to an "effective waiver" of uninsured motorist coverage by the insured will exclude it from a liability policy for which he makes application. (*Utah Home Fire Ins. Co.* v. *McCarty* (1968) 266 Cal.App.2d 892, 895 [72 Cal.Rptr. 460].) Waiver is the intentional relinquishment of a known right after knowledge of the facts. (*Wienke* v. *Smith* (1918) 179 Cal. 220, 226 [176 P. 42]; *Kay* v. *Kay* (1961) 188 Cal.App.2d 214, 218 [10 Cal.Rptr. 196].) Although a trial court's finding of fact that a waiver occurred will not be disturbed on appeal if supported by sufficient evidence, the finding made here presents successive questions of law and fact.

The question of law arises from the language of the "agreement" itself, considered as an instrument in writing and irrespective of the circumstances preceding and surrounding Bohlert's signature. The trial court interpreted it without the aid of extrinsic evidence as to what it meant, or with the aid of some testimony (by Munroe, as to the purpose for which a signature was obtained) which was uncontradicted. (Bohlert testified that he neither read nor understood the paragraph when he signed it, but his testimony

---

[3]The pertinent provisions of the statute are in its first two sentences, which read as follows: "11580.2. (a) No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this state to the owner or operator of a motor vehicle . . . unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code insuring the insured . . . for all sums within such limits which he . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. The insurer and any named insured may by agreement in writing delete the provision covering damage caused by an uninsured motor vehicle."

did not contradict Munroe's statement of purpose as offered at the trial.) In either event, the interpretation of the instrument initially poses a question of law whose resolution by the trial court is not binding on appeal. (*Parsons v. Bristol Dev. Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Coronet Credit Corp.* v. *West Thrift Co.* (1966) 244 Cal. App.2d 631, 641 [53 Cal.Rptr. 433].)

According to the paragraph's language, Bohlert purportedly agreed with Spartan (1) that the policy would exclude "the coverage of 'Family Protection' (Uninsured Motorists)" and (2) that it would "afford no coverage for damage caused by an uninsured motor vehicle as included under provisions of Section 11580.2 of the California Insurance Code." Neither of the quoted expressions explains the other; their conjunctive use in the paragraph could import that they referred to two separate coverages. The term "Family Protection" is not explained in the first expression, nor does it appear anywhere else on the form. Uninsured motorist coverage, as such, is not explained on the form, and the cryptic titles "Uninsured Motorist" (in the checklist box) and "(Uninsured Motorists)" do not serve this purpose.

Except for the bare—and, under the circumstances, wholly uninformative—reference to Insurance Code section 11580.2, the language providing that "the policy shall afford no coverage for damage caused by an uninsured motor vehicle" does not show the prospective insured that it means damage incurred *by him;* he could readily construe it to mean coverage for damage caused *to others* by an "uninsured motor vehicle" for whose operation he was responsible (coverage which would not have interested Bohlert if there were no such vehicle other than the motorcycle which he was presently covering against liability to others). Because the language is ambiguous to this extent, it does not—on its face—meet the standard that an agreement excluding uninsured motorist coverage must be "conspicuous, plain and clear" to constitute an "effective waiver" thereof (*Utah Home Fire Ins. Co.* v. *McCarty, supra,* 266 Cal.App.2d 892 at p. 895.) The ambiguity, moreover, must be construed against Spartan, either as the contracting party who caused it to be drafted (Civ. Code, § 1654; *Laux* v. *Freed* (1960) 53 Cal.2d 512, 524 [2 Cal.Rptr. 265, 348 P.2d 873]) or as an insurer relying upon it to exclude coverage. (*Arenson* v. *National Auto. & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 83 [286 P.2d 816]; *Nuffer* v. *Insurance Co. of North America* (1965) 236 Cal.App.2d 349, 356 [45 Cal.Rptr. 918].)

Answering the preliminary question of law, we conclude that the paragraph signed by Bohlert (and whether or not he read it) did not *on its face* amount to an "effective waiver" of uninsured motorist coverage. The final question is whether Bohlert, signing it under all the circumstances, executed

an "intentional relinquishment of a known right after knowledge of the facts" (*Wienke* v. *Smith, supra,* 179 Cal. 220 at p. 226; *Kay* v. *Kay, supra,* 188 Cal.App.2d 214 at p. 218), which is a question of fact alone. (*Kay* v. *Kay, supra.*) The answer depends upon whether Bohlert and Munroe discussed uninsured motorist coverage and the former's legal right to it under the statute, and whether Bohlert understood the meaning imparted to the paragraph by Spartan.

A close analysis of Munroe's testimony produces substantial doubt that it establishes these facts, sufficiently to support a finding in Spartan's favor, against Bohlert's explicit testimony that the subject was not discussed and the agreement not explained. ■ We are not called upon, however, to assess the testimony in this regard, because (1) the factual issues mentioned were demonstrably material, and (2) Bohlert requested special findings on them and was refused. (See text at fn. 2, *ante.*) Because of the latter event, we cannot infer that the trial court found adversely to Bohlert on any of the issues presented. (Code Civ. Proc., § 634; *Ward* v. *McMahan's of Torrance* (1963) 215 Cal.App.2d 511, 517 [30 Cal. Rptr. 213].) It thus appears that the trial court failed to make findings "of all issues of fact in the case" (Code Civ. Proc., § 632[4]), which omission requires reversal of the judgment. (*Ward* v. *McMahan's of Torrance, supra.*)

The judgment is reversed.

Devine, P. J., and Christian, J., concurred.

---

[4]The reference here is to the language of section 632 as amended in 1959. (See Stats. 1959, ch. 637, p. 2613, § 1.)