[Civ. No. 38292. Second Dist., Div. Four. Dec. 28, 1971.]

CHARLES K. HAGAR, Plaintiff and Appellant, v.
ELITE INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Wise, Kilpatrick & Clayton and John L. Fort for Plaintiff and Appellant.

Ives, Kirwan & Dibble, Darwin L. Dibble and John Brevidoro for Defendant and Respondent.

## OPINION

**KINGSLEY, J.**—Plaintiff Hagar's complaint in declaratory relief alleged that he was protected by uninsured motorist coverage under defendant's insurance policy within the meaning of section 11580.2 of the Insurance Code. Defendant, Elite Insurance Company, answered that plaintiff had agreed to delete uninsured motorist coverage in his application for insurance. The court found that Hagar signed an application containing a provision deleting such coverage, that he "examined and retained" the policy, that the policy contained no premium charge for uninsured motorist coverage, and that the agreement was clear and unambiguous. The court concluded that the document signed by plaintiff was effective, and that he was not protected under uninsured motorist coverage.

Plaintiff went to Bill Robertson's Honda and Triumph of Hollywood to purchase a Honda motorcycle. At that time, he also applied for insurance. The application contained the following purported deletion of uninsured motorist coverage, which plaintiff signed: "The applicant hereby agrees with the company that the coverage of Uninsured Motorists, is excluded from the policy and that the policy shall afford no coverage for damage caused by uninsured motor vehicle under the provisions of the applicable section of the insurance code of the state in which this insurance is written.

"If Uninsured Motorist Coverage NOT Desired, Sign Here /s/ KENNETH C. HAGAR"

Plaintiff testified that, before he signed the application, uninsured motorist coverage was not discussed, and he did not know what this coverage was, nor did anyone ask him if he wanted uninsured motorist coverage. Plaintiff told Mr. Van Leeuwen, the salesman, that he wanted "full coverage," but Mr. Van Leeuwen never explained or discussed uninsured motorist coverage, and plaintiff did not closely look at the charges for various coverages in the policy.

On the other hand, Mr. Van Leeuwen testified that he explained uninsured motorist coverage to plaintiff. His testimony was as follows:

"Q. By MR. DIBBLE: Can you tell me whether you had any other discussions with him concerning any of the other items of insurance before you had him sign an application?

"A. Yes. We discussed the uninsured motorist, but I told him uninsured motorists, the only thing it covered if he got in an accident is that his motorcycle would be repaired because he had physical damage on it. It was $100 deductible and the only thing uninsured motorist coverage

would do would pay his hospital bills. At that time he had just gotten out of the Army and was going back to work at Douglas, I believe, and he said he had medical insurance on his job.

"Q. So what was the ultimate discussion insofar as that particular coverage was concerned?

"A. It ended right there. I told him to sign those two places, right there and right there, and he signed them.

"Q. Did he tell you whether he did or did not want that coverage, the uninsured motorist?

"A. Yes; we discussed it and he signed it. Evidently he didn't, I would think.

"Q. Do you have a specific recollection as of this time?

"A. I'm trying to think how this thing came about. It seems to me he said he had medical insurance through his job, or when he went back to work, I believe, he had medical insurance on his job and he said he would not need it. I am pretty sure that is what he said."

The only issue before the court is whether plaintiff had effectively agreed to delete uninsured motorist coverage under section 11580.2 of the California Insurance Code. Subdivision (a) of section 11580.2 reads as follows: "(a) No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this state to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code insuring the insured, his heirs or his legal represenative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle. Such deletion by any named insured shall be binding upon every insured to whom such policy or endorsement provisions apply. A policy shall be excluded from the application of this section if the only coverage with respect to the use of any motor vehicle is limited to the contingent liability arising out of the use of nonowned motor vehicles."

■ Under the above code section, an automobile insurance policy will be construed to provide uninsured motorist coverage unless there is an agreement in writing deleting such coverage (*Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333, 336 [43 Cal.Rptr. 476]), regardless of the fact that no additional premium was charged for the coverage. (*Eliopulos* v. *North River Ins. Co.* (1963) 219 Cal.App.2d 845 [33 Cal.Rptr. 449].) ■ Because such coverage is indicated by the legislation to be a matter of public policy, a claim of deletion is not determined simply by reference to the rules which courts otherwise apply to determine the intent of contracting parties. (*California Cas. Indem. Exch.* v. *Steven* (1970) 5 Cal.App.3d 304 [85 Cal.Rptr. 82].) To be effective, there must be a provision for deletion "in plain and understandable language" (*Myers* v. *National Automobile & Cas. Ins. Co.* (1967) 252 Cal.App.2d 599 [60 Cal.Rptr. 743]), and it must be conspicuous, plain and clear. (*Pechtel* v. *Universal Underwriters Ins. Co.* (1971) 15 Cal.App.3d 194 [93 Cal.Rptr. 53]; *Kincer* v. *Reserve Ins. Co.* (1970) 11 Cal.App.3d 714, 720 [90 Cal.Rptr. 94].)

■ Plaintiff argues that the document signed by him in his application for insurance was ineffective in that it was not also within, or attached to, the policy of insurance. It is clear that an agreement to delete uninsured motorist coverage may be made by a separate agreement in writing, and not only in the application for the policy. (*Holland* v. *Universal Underwriters Ins. Co.* (1969) 270 Cal.App.2d 417 [75 Cal.Rptr. 669]; *Myers* v. *National Automobile & Cas. Ins. Co.* (1967) *supra*, 252 Cal.App.2d 599.)

However, plaintiff argues that the above general rule is inapplicable under the terms of the policy itself. Paragraph 17, under the "conditions" of the policy, recites that said policy embodies all agreements existing between plaintiff and defendant or any of its agents relating to this insurance. Plaintiff argues that he was entitled to rely on the recital in defendant's policy that the policy was the sole agreement between the parties. We disagree. Plaintiff relies on *Allstate Ins. Co.* v. *Dean* (1969) 269 Cal. App.2d 1 [76 Cal.Rptr. 543]. In that case, there was a separate driver exclusion agreement, not made part of the policy. The policy contained a clause that "this policy embodies all agreements, relating to his insurance, existing between himself and Allstate or any of its agents." The court's decision turned on the language of the policy which stated that the policy contained all agreements. The court said (at pp. 3 and 4): *"Under the language of the policy* it would be difficult for a policyholder to conclude that an agreement not attached to the policy and to which the policy did not refer had become part of the policy. The idea of a policy as an

instrument in written form, whose tangible shape protects both parties to the insurance contract and acts as a check against unwarranted demands and unwarranted rejections, has been well publicized, and most persons take the view that a policy consists of what is written in it, either directly or by reference." (Italics supplied.) In referring to the clause that the policy embodied all agreements the court said that "[the insured] was entitled to take [the insurer] at its word."

However, the policy herein involved, opens with the statement that "[t]he insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges." There is no premium charge indicated for uninsured motorist coverage, although a place for such charge is shown on the face of the policy. In the policy involved in the *Allstate* case, there was no place to indicate any premium differential caused by a *driver exclusion* endorsement. The difference is material. If plaintiff is to rely on the language of the policy, he must rely on all of it. Here the policy language shows that, insofar as *its* language is concerned, uninsured motorist coverage was not included.

■ However, the failure of the argument based on the *Allstate* case is not determinative of this appeal. As we have said above, the public policy of this state requires an insurer to provide uninsured motorist coverage, even though the policy does not provide for it and even if no premium for such coverage is charged or collected. That coverage is imposed on the insurer as a matter of law (Ins. Code, § 11580.2) and it requires a clear and express agreement between the parties to delete it.

Neither the language of the purported agreement to delete nor the explanation given to plaintiff by Mr. Van Leeuwen meets the test of clarity and specificity imposed by the cases above cited.

The court in *Bohlert* v. *Spartan Ins. Co.* (1969) 3 Cal.App.3d 113, 119 [83 Cal.Rptr. 515], examined similar language in a purported deletion agreement and found it insufficient. The *Bohlert* court said: "Except for the bare—and, under the circumstances, wholly uninformative—reference to Insurance Code section 11580.2, the language providing that 'the policy shall afford no coverage for damage caused by an uninsured motor vehicle' does not show the prospective insured that it means damage incurred by *him*; he could readily construe it to mean coverage for damage caused *to others* by an 'uninsured motor vehicle' for whose operation he was responsible (coverage which would not have interested Bohlert if there were no such vehicle other than the motorcycle which he was presently covering against liability to others). Because the language is ambiguous *to this extent*, it does not—on its face—meet the standard that

an agreement excluding uninsured motorist coverage must be 'conspicuous, plain and clear' to constitute an 'effective waiver' thereof [citation]." (Italics in original.)

Plaintiff testified that no explanation of the waiver clause was given; Mr. Van Leeuwen testified that an explanation was given. Even accepting Mr. Van Leeuwen's testimony as true, an examination of that testimony reveals that there was practically no explanation of the meaning of the provision.

By analogy to the case of *Bohlert* v. *Spartan Ins. Co.* (1969) *supra,* 3 Cal.App.3d 113, we find the written deletion insufficient as a matter of law. And, as we have stated above, defendant's oral explanation in no way cures the defect of the written deletion. Neither written nor oral statement advised plaintiff what his rights to recover were, nor did it clearly define the meaning of the type of coverage. The court in *Bohlert* v. *Spartan Ins. Co.* (1969) 3 Cal.App.3d 113 [83 Cal.Rptr. 515], was faced with a similar problem. The court said at page 120: ". . . The answer depends upon whether Bohlert and Munroe [the producing agent] discussed uninsured motorist coverage and the former's legal right to it under the statute, and whether Bohlert understood the meaning imparted to the paragraph by Spartan.

"A close analysis of Munroe's testimony produces substantial doubt that it establishes these facts, sufficiently to support a finding in Spartan's favor, against Bohlert's explicit testimony that the subject was not discussed and the agreement not explained."

The case before us is readily distinguishable from *Pechtel* v. *Universal Underwriters Ins. Co.* (1971) *supra,* 15 Cal.App.3d 194, where it was clear from the plaintiff's own testimony that plaintiff knew what coverage he was deleting when he signed the agreement therein involved.

We are not unaware that the trial court found that plaintiff had "examined and retained" the policy in question and that the policy form contained a long uninsured motorist clause. Whatever the quoted finding may mean, it is not directed to any issue herein material. As we point out above, the case at bench turns on the doctrine that plaintiff receives the statutorily required coverage, as a matter of law, unless he has expressly "agreed" to delete it. As the cases have pointed out, there must be an express written agreement "in plain and understandable language." (*Kincer* v. *Reserve Ins. Co.* (1970) *supra,* 11 Cal.App.3d 714, 718; *Pechtel* v. *Universal Underwriters Ins. Co.* (1971) *supra,* 15 Cal.App.3d 194, 200.) The writing signed by plaintiff in this case is, on its face, inadequate to

meet that requirement because it is incomplete and potentially misleading in the respect pointed out in the *Kincer* opinion, quoted *supra.*

We recognize that a cryptic or ambiguous writing may nevertheless be effective between the parties if extrinsic evidence indicates what the parties actually intended by the language which was used. (See, e.g., *Pechtel, supra*, at p. 204.) Here the evidence will not support any finding that plaintiff had any such understanding of the import of the writing. Accepting Van Leeuwen's testimony, as the trial court did, the record fails to show that the writing was understandable to, or understood by, plaintiff. Under the facts of this case, the mere examination and retention of the policy did not serve to remedy the incomplete and inaccurate explanation given plaintiff in the written agreement and in Van Leeuwen's oral statement.

The judgment is reversed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied January 17, 1972, and respondent's petition for a hearing by the Supreme Court was denied February 23, 1972.