[No. F008854. Fifth Dist. Sept. 29, 1988.]

DAVID HARTMAN et al., Plaintiffs and Appellants, v.
PROGRESSIVE CASUALTY INSURANCE COMPANY, Defendant
and Respondent.

COUNSEL

Rushing, Lyions & Anderson and George E. Anderson for Plaintiffs and Appellants.

Greve, Clifford, Diepenbrock & Paras and Anthony C. Diepenbrock for Defendant and Respondent.

OPINION

**STONE (W. A.), J.**—This appeal is taken from a judgment entered following a nonjury trial in a declaratory relief action. The sole issue raised by appellant is whether the failure to recite language prescribed in Insurance Code[1] section 11580.2, subdivision (a)(2), in an agreement to waive uninsured motorist coverage establishes as a matter of law that the insured did not waive uninsured motorist coverage. We will conclude that the failure to include such language in the agreement does not conclusively establish lack of waiver, and we will affirm the judgment.

STATEMENT OF THE FACTS AND TRIAL COURT PROCEEDINGS

An action for declaratory relief was filed by appellants, surviving children of Loren Hartman, deceased, in which they contended that although their

---

[1] All statutory references are to the Insurance Code unless otherwise indicated.

father had signed a waiver of uninsured motorist coverage, the waiver was ineffective because it did not comply with the mandatory language of section 11580.2, subdivision (a)(2), as it read in 1984 when the waiver agreement was signed. At trial, appellants relied solely upon documentary evidence to support their contention.

Respondent's theory was that regardless of whether or not the language of the waiver agreement was precisely that set forth in section 11580.2, subdivision (a)(2), as that section read in 1984, it was a question of fact whether Hartman waived coverage. Respondent's alternate theory was that the language of the waiver agreement signed by Hartman substantially complied with the 1984 language. The evidence elicited by respondent revealed the following:

In March of 1984, appellants' father, Loren Hartman, went to Modesto Affiliated Insurance Agency to discuss coverage for his 1974 Honda motorcycle. Modesto Affiliated provided all of Hartman's vehicle insurance coverage. His agent quoted the various types of coverage for the motorcycle, and he opted for the minimum. His agent explained uninsured motorist coverage and quoted the ranges of coverage and premium rates for the motorcycle. He unequivocally declined the offer. He was given a waiver agreement which contained an advisement in language identical to the 1980 version of section 11580.2, subdivision (a)(2), regarding waiver of uninsured motorist coverage. He read the advisement and signed the waiver agreement in his agent's presence.

On other occasions Hartman had stated to his agent that he would prefer not to have insurance, but that he had to obtain coverage since he was a police officer and would be in "hot water" if he did not.

In February of 1985 Hartman returned to Modesto Affiliated to change his coverage from the 1974 Honda motorcycle to a 1984 model. The ranges of coverage were quoted and he again opted for the minimum. When the premium for uninsured motorist coverage was quoted he again declined this coverage.[2]

On August 25, 1985, Hartman was killed when his motorcycle collided with an automobile driven by an uninsured motorist. Appellants filed a claim with respondent, Progressive Casualty Insurance Company, under

---

[2] Hartman apparently did not sign a second waiver agreement. Section 11580.2, subdivision (a)(1), provides in pertinent part, "[a]ny such agreements by any named insured or agreement for the amount of coverage shall . . . continue to be so binding with respect to any continuation or renewal of the policy or with respect to any other policy which extends, changes, supersedes, or replaces the policy issued to the named insured by the same insurer, . . ."

the insurance policy purchased by their father prior to his death. Respondent denied the claim, alleging that Loren Hartman had signed an agreement waiving uninsured motorist coverage at the time he applied for coverage.

Judgment was entered in favor of respondent. The trial court found as follows: "1. Defendant PROGRESSIVE CASUALTY INSURANCE COMPANY is entitled to a declaratory judgment on the first cause of action as set forth below.

"2. When insured, LOREN HARTMAN, voluntarily signed the agreement to delete uninsured motorist coverage on March 2, 1984, he knew, understood, and appreciated a) the nature of uninsured motorist coverage; b) his right to such coverage in an amount equal to the limits of liability for bodily injury in the underlying policy of insurance, or in a lesser amount within the financial responsibility requirements; and c) the premium cost of the uninsured motorist coverage available to him.

"3. When insured, LOREN HARTMAN, voluntarily signed the agreement to delete on March 2, 1984, and when he obtained a change endorsement to the policy on February 27, 1985, he fully, understandably, and knowingly intended to delete any and all uninsured motorist coverage from the PROGRESSIVE policy.

"4. Although the agreement to delete signed by LOREN HARTMAN on March 2, 1984, was not in the exact verbatim form specified in Cal. Ins. Code, § 11580.2(a)(2) as it read in March, 1984, the agreement nonetheless was adequate in its terms to give insured, LOREN HARTMAN, the required notice of all rights that were subject to deletion from the policy, the nature of those rights, and the appropriate warnings against signing the agreement without fully understanding what was being waived or deleted.

"5. The agreement to delete uninsured motorist coverage was a knowing and voluntary waiver and was legally effective pursuant to Cal. Ins. Code § 11580.2 when signed by the insured, LOREN HARTMAN, on March 2, 1984, to relieve defendant, PROGRESSIVE CASUALTY INSURANCE COMPANY, from all liability to provide uninsured motorist coverage, and the agreement was still fully in effect at the time of the insured's death on August 25, 1985."

## DISCUSSION

 As we noted at the outset, appellants present but one issue, whether the failure to recite statutorily prescribed language in the agreement to

waive uninsured motorist coverage establishes as a matter of law that the insured did not waive uninsured motorist coverage.

The waiver agreement signed by decedent in March 1984 provides:

"AGREEMENT TO DELETE UNINSURED MOTORIST COVERAGE

" 'The California Insurance Code requires an insurer to provide uninsured motorists coverage in each bodily injury liability insurance policy it issues covering liability arising out of the ownership, maintenance, or use of a motor vehicle. Such section also permits the insurer and the applicant to delete such coverage completely or with respect to one or more natural persons designated by name when operating a motor vehicle. Uninsured motorists coverage insures the insured, his heirs, or legal representatives for all sums within the financial responsibility limits which such person or persons are legally entitled to recover as damages for bodily injury, including any resulting sickness, disease, or death, to him from the owner or operator of an uninsured motor vehicle not owned or operated by the insured.'

"Under the authority granted them by Section 11580.2(a) of the California Insurance Code, Progressive Casualty Insurance Company and the applicant, by this Agreement, hereby waive and declare void all provisions of this Policy affording recoverable damages to the insured, or any other person qualifying for coverage, caused by an Uninsured Motorist. The deletion applies to this policy, or any continuation, renewal or replacement of the policy by the named insured, or the reinstatement within 30 days of any lapse thereof. DO NOT SIGN THIS AGREEMENT UNLESS YOU READ AND UNDERSTAND IT.

"Accepted: Signature of
Named Insured X /s/LOREN HARTMAN Date 3-2-84"

The language of this agreement is taken from section 11580.2, subdivision (a)(2), as it read in 1980. However, at the time the agreement was signed[3] section 11580.2, subdivision (a)(2), provided, in pertinent part: "The agreement specified in paragraph (1) shall be in the following form:

" 'The California Insurance Code requires an insurer to provide uninsured motorists coverage in each bodily injury liability insurance policy it

---

[3] Appellants assert that at the time the agreement was signed in March 1984 section 11580.2 contained the language of the 1984 amendment. The 1984 amendment was not operative until January 1, 1985. (Stats. 1984, ch. 1361, § 3, p. 4813; Stats. 1984, ch. 1493, § 3, p. 5263.)

issues covering liability arising out of the ownership, maintenance, or use of a motor vehicle. Such section also permits the insurer and the applicant to delete such coverage completely or to delete such coverage when a motor vehicle is operated by a natural person or persons designated by name, or agree to provide such coverage in an amount less than that required by subdivision (m) of Section 11580.2 of the Insurance Code, but not less than the financial responsibility requirements. Uninsured motorists coverage insures the insured, his heirs, or legal representatives for all sums within the limits established by law, which such person or persons are legally entitled to recover as damages for bodily injury, including any resulting sickness, disease, or death, to him from the owner or operator of an uninsured motor vehicle not owned or operated by the insured.' " (Stats. 1983, ch. 768, § 1; Stats. 1983, ch. 1244, § 2.5.)

Appellants contend the Legislature intended strict and precise compliance with the statute in effect at the time of the purported waiver by use of the language prescribed. According to them, the failure to do so renders the waiver ineffective as a matter of law. They cite no authority for this proposition and concede the issue is one of first impression. In support of their position appellants argue (1) the phrase "shall be in the following form" creates a mandate to use the prescribed language, (2) the strong public policy in favor of uninsured motorist coverage, and (3) the requirement of "strict compliance with the provision of the law permitting such exclusion" (*Dufresne* v. *Elite Insurance Co.* (1972) 26 Cal.App.3d 916, 921-922 [103 Cal.Rptr. 347, 55 A.L.R.3d 206]).

Prior to 1972 section 11580.2, subdivision (a), provided that uninsured motorist coverage could be deleted by the insurer and named insured by an agreement in writing. Although the Legislature prescribed no particular language for such an agreement, the courts held that in order for a waiver of uninsured motorist coverage to be effective the provision for deletion must be in language which is " 'conspicuous, plain and clear.' " (*Hagar* v. *Elite Ins. Co.* (1971) 22 Cal.App.3d 505, 509 [99 Cal.Rptr. 423]; *Kincer* v. *Reserve Ins. Co.* (1970) 11 Cal.App.3d 714, 720 [90 Cal.Rptr. 94]; *Bohlert* v. *Spartan Ins. Co.* (1969) 3 Cal.App.3d 113, 119 [83 Cal.Rptr. 515]; see also *Pechtel* v. *Universal Underwriters Ins. Co.* (1971) 15 Cal.App.3d 194, 200 [93 Cal.Rptr. 53].) This was referred to by the court in *Hagar* v. *Elite Ins. Co., supra,* at page 510, as the "test of clarity and specificity." Under this test a waiver agreement which did not advise the insured what his rights to recover were and define the meaning of the type of coverage would not be sufficient to constitute a waiver of uninsured motorist coverage. (*Id.* at p. 511.)

However, the courts looked not only to the written agreement but to the circumstances surrounding the waiver to determine whether there was an

" 'intentional relinquishment of a known right after knowledge of the facts' [citations], which is a question of fact alone." (*Bohlert* v. *Spartan Ins. Co., supra,* 3 Cal.App.3d at p. 120.)

In *Pechtel* v. *Universal Underwriters Ins. Co., supra,* 15 Cal.App.3d 194, the holding in *Bohlert* was construed as establishing a two-pronged analysis, requiring first that it be determined as a matter of law whether the language of the waiver agreement is legally sufficient, and second whether, under all the circumstances, it appears the insured knew that he was waiving uninsured motorist coverage. (*Id.* at pp. 201, 203-204.)

Then followed *Hagar* v. *Elite Ins. Co., supra,* 22 Cal.App.3d 505, in which the court recognized that "a cryptic or ambiguous writing may nevertheless be effective between the parties if extrinsic evidence indicates what the parties actually intended by the language which was used . . ." in the waiver agreement. (*Id.* at p. 512.)

In *Grimes* v. *Elite Ins. Co.* (1978) 82 Cal.App.3d 130 [146 Cal.Rptr. 808], it was held that despite the insufficiency of the written waiver agreement the insured, who had purchased his policy in 1971, was not entitled to a directed verdict where there was ample extrinsic evidence that the insured had in fact intentionally waived uninsured motorist coverage.

In 1972 section 11580.2 was amended. (Stats. 1972, ch. 952, p. 1722.) In reference to the agreement to delete uninsured motorist coverage found in subdivision (a)(1), the amendment added the words "in the form specified in paragraph (2)." Subdivision (a)(2) provided as follows: "(2) The agreement specified in paragraph (1) shall be in the following form:

" 'The California Insurance Code requires an insurer to provide uninsured motorists coverage in each bodily injury liability insurance policy it issues covering liability arising out of the ownership, maintenance, or use of a motor vehicle. Such section also permits the insurer and the applicant to delete such coverage completely or with respect to one or more natural persons designated by name when operating a motor vehicle. Uninsured motorists coverage insures the insured, his heirs, or legal representatives for all sums within the financial responsibility limits which such person or persons are legally entitled to recover as damages for bodily injury, including any resulting sickness, disease, or death, to him from the owner or operator of an uninsured motor vehicle not owned or operated by the insured.'

"Such agreement may contain additional statements not in derogation of or conflict with the foregoing. The execution of such agreement shall relieve

the insurer of liability under this section while such agreement remains in effect."

According to appellants, once the Legislature set forth the language to be used in an agreement to delete uninsured motorist coverage, any deviation from that language renders the waiver insufficient regardless of whether the insured in fact intended to waive coverage. The question then is whether the two-pronged analysis set forth in cases prior to the amendment was overruled when the Legislature set forth the language for an agreement to delete uninsured motorist coverage.

Without addressing the question whether a knowledgeable waiver can be obtained by an agent's adequate explanation of the coverage deleted, at least one commentator has postulated that the purpose and effect of the 1972 amendment was to eliminate uncertainty and litigation over the language of an agreement.

"The clear intent of the Legislature was to end litigation on the contents of waiver forms by legislating the words to be used. Senator Grunsky, in his floor statement in support of SB 66, said:

" '. . . The second change establishes the statutory language which is required to be used when an insurer and an insured agree that the insured will waive uninsured motorist coverage under his policy. At the present time, companies are free to use any language they choose, some of which is inadequate and has resulted in substantial litigation.'

"The legislature seems to have perceived the litigation on the validity of various waivers of uninsured motorist coverage to be a simple matter of argument over the words to be used on the 'agreement in writing' required by the statute. SB 66 does not concern itself with any aspect of the rejection of uninsured motorist coverage other than the provision of words to be included on the form used to provide the 'agreement in writing.'

"This limitation of legislative concern to the words of the writing is curious, given the concern which had been shown by the courts for the actions of the agent selling the insurance policy.[29]

"A possible explanation of this omission of guidance for the agent obtaining the waiver from the statute is the last sentence of California Insurance Code § 11580.2(a)(1), which was discussed just above. By stating that the signed waiver relieved the insurance company of liability, the legislature may well have been trying to meet the concern of the courts for the actions of the agent in obtaining the waiver without introducing a litany for the

agent, and without making a vague requirement that the agent answer questions or 'explain' the waiver and its consequences.

"· . . . . . . . . . . . . . . . . . . .

". . . The legislative response to the problems of rejecting uninsured motorist coverage under the pre-1972 form of California Insurance Code § 11580.2 centered on providing words which, if printed on the form used to obtain the 'agreement in writing' to delete coverage, could result in an effective waiver of the coverage.

"The intent of the legislature seems to have been to end litigation on the words of the form, . . ." (Heffelbower, *Uninsured Motorist Coverage: Can Signed Waiver in Statutory Form Be Relied Upon in California* (1973) 4 Golden Gate L.Rev. 19, 25-27, fns. 28, 30 omitted.)

Footnote 29 in the text makes reference to the authorities we have previously discussed:

"29. Dufresne v. Elite Ins. Co., 26 Cal.App.3d 916, 103 Cal.Rptr. 347 (1972); Hagar v. Elite Ins. Co., 22 Cal.App.3d 505, 99 Cal.Rptr. 423 (1971); Bohlert v. Spartan Ins. Co., 3 Cal.App.3d 113, 83 Cal.Rptr. 515 (1969)." (Heffelbower, *op. cit. supra*, 4 Golden Gate L.Rev. at p. 25.)

The problem with which the author, Heffelbower, was concerned was whether a waiver agreement containing the statutorily prescribed language established a conclusive presumption that an insured waived uninsured motorist coverage. His conclusion was that given the absence of any expressed intent on the part of the Legislature to create a conclusive presumption, and the strong public policy in favor of uninsured motorist coverage, the effectiveness of a waiver of uninsured motorist coverage must turn upon an analysis of the language of the agreement *and* the extrinsic evidence of knowledgeable waiver. (Heffelbower, *op. cit. supra*, 4 Golden Gate L.Rev. at p. 29.) Conclusive presumptions are those established by law to be so. (Evid. Code, § 620.) If a presumption is not conclusive, it is subject to rebuttal by contrary proof. (Evid. Code, § 601.)

We hold that even if an agreement to waive uninsured motorist coverage is insufficient because it does not contain the prescribed statutory language, the insufficiency is only prima facie evidence of an ineffective waiver of coverage. The resulting presumption is subject to rebuttal by evidence of an " 'intentional relinquishment of a known right after knowledge of the facts.' " (*Bohlert* v. *Spartan Ins. Co., supra,* 3 Cal.App.3d at p. 120.)

The trial court properly considered extrinsic evidence of waiver. Appellant does not challenge the sufficiency of the facts to support the finding by

the trial court that Loren Hartman signed the agreement intending to waive uninsured motorist coverage.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Martin, Acting P. J., and Hamlin, J., concurred.