[Civ. No. 7688.   Third Dist.   Dec. 22, 1949.]

LORENZO MURPHY et al., Appellants, v. W. H. MUNSON, Respondent.

Barr & Hammond, J. Everett Barr and Jack K. Berman for Appellants.

Mark M. Brawman for Respondent.

THOMPSON, J.—This is a suit to recover the purchase price of a portable sawmill and equipment sold to defendant for the agreed price of $4,207.14 and the delivery of which the purchaser refused to accept. The answer denied the material allegations of the complaint and pleaded, as a further defense, the statute of frauds (Civ. Code, § 1624a.) The agreement to purchase the sawmill was in writing, which was signed in defendant's name by his amanuensis, at his request. It was in the form of a letter, the terms of which were dictated to defendant's clerk, Mr. Miller, who took memoranda of the terms and order for the machine, and subsequently wrote them out on one of defendant's printed letterheads and signed defendant's name to it as he had been requested to do.

In an amendment to the complaint the plaintiffs pleaded equitable estoppel. At the written request of the defendant, the standard machine which was ordered was altered, to the detriment of plaintiffs, and new parts were purchased and

installed at a cost of $525. The court adopted findings favorable to the defendant, and judgment was rendered that plaintiffs take nothing by this action. From that judgment this appeal was perfected.

The vital questions to be determined on this appeal are whether the findings and judgment are supported by the evidence, whether the defendant authorized his clerk to order the machine in his name, and whether the conduct of the defendant estopped him from denying that he contracted to purchase the machine.

We are of the opinion the essential findings and judgment are not supported by the evidence. The uncontradicted evidence clearly indicates that the defendant not only contracted in writing to purchase the portable sawmill in question, but he confirmed and ratified that contract by letters which he subsequently sent to plaintiffs.

Plaintiffs were engaged in business in northern California under the fictitious name of A. L. Young Machinery Company, with their principal place of business at Fresno. They sold wood-working machines, trucking equipment and portable sawmills, including standard Farquhar Saw Mills and regular equipment therefor. They issued circulars advertising such machinery and equipment, together with the prices thereof. John Edward Kelly, who resides at 1252 Portola Drive, San Francisco, was a branch manager of plaintiffs' business and was a material witness at the trial of this case.

The defendant was engaged in the lumber business near Callahan, Siskiyou County, where he lived. He employed James W. Miller as his bookkeeper, secretary and clerk. Most of the time Mr. Miller lived in the home of Mr. Munson. Regarding the letters which constitute the written agreement to purchase the machine in question, it appears that on August 16, 1947, in response to an inquiry from the Munson Lumber Company, the A. L. Young Machinery Company wrote that company a letter to which a circular was attached, advertising the Farquhar Saw Mill and equipment with the selling prices quoted therein. In that letter plaintiffs offered to sell and supply defendant the desired machinery. On August 20th, the defendant, Munson, called his clerk, Mr. Miller, into his office and after the reading of the correspondence on that subject he instructed the clerk that "he wanted to order this mill" and certain specified machinery. He had previously instructed his clerk to sign defendant's name to such communications. The clerk testified that he then made a written

memorandum, in the presence of the defendant, of the machinery which he was told to order for the defendant. The clerk said that he transcribed the letter, in strict accordance with his instructions, on defendant's printed letterheads on August 20th, to which he signed defendant's name as directed. That letter states, in part, as follows:

"I am hereby placing my order for the saw-mill referred to in your letter of August 16, and as described in the sheet which accompanied the letter, . . . ."

It is true that the clerk said with respect to defendant's signature on that particular letter, "I couldn't say whether he told me to sign his name [to that particular letter] or not." But he did say the defendant had given him general instructions to sign his name to such correspondence. In response to the question, "When you started working for him, he told you to sign his name?" to which he replied "Yes." The clerk testified that he had no discretion and that he had nothing to do with determining what machinery should be ordered, or with respect to any of the terms of the contract; that the defendant himself decided all such matters and merely dictated to him, as an amanuensis, the terms and conditions of the agreement and that he merely transcribed the letter from the memoranda which he made, and signed defendant's name thereto, as usual, at his request.

Regarding the authorization of defendant for his clerk to sign his name to that and other letters on that subject, it is significant that the defendant did not testify that he did not authorize the clerk to sign his name. The defendant, Munson, was called as a witness in his own behalf. He did not deny that authorization. His examination in chief was exceedingly brief. It consisted only of the following material testimony: "Q. . . . Have you examined the signatures on each of the exhibits? A. I have. Q. Are those *signatures* your signatures? A. No." Of course he merely meant that his name on those instruments was not in his handwriting. But an inference might be drawn from his answer that he did not authorize anyone to sign his name for him. Certainly the plaintiffs had a right on cross-examination to inquire what the defendant meant by saying those were not his signatures. The laconic answer of defendant raised but avoided an answer to the most important issue in this case as to whether the defendant authorized Mr. Miller to sign his name to the written order for the machinery. ■ On cross-examination plaintiff

had a right to prove by the defendant, if possible, that the contract to buy the machinery was valid and binding because the defendant authorized his clerk to sign his name to the letters. That was competent and proper cross-examination. But the court erroneously sustained objections to those proper questions on the stated theory that they were not valid or binding because the defendant was not *personally present* when his name was signed to the documents, even though they were otherwise duly authorized. The plaintiffs' attorney then offered to prove that ''Mr. Miller affixed his [defendant's] signature at his direction,'' which offer was improperly denied on the ground that it was not proper cross-examination. The plaintiffs were thereby precluded from cross-examining the defendant on the most important issue of the case. We are satisfied the defendant authorized those signatures. Miller so testified, in effect. The uncontradicted evidence of the case, and the entire conduct of the defendant confirms that conclusion. The rulings of the court on those questions and upon that offer were clearly erroneous.

In defendant's letter to plaintiffs dated August 20th, he requested plaintiffs to make specified alterations and changes in the standard Farquhar Saw Mill as advertised by the addition of ''a third headblock and a top-saw rig to carry a 40″ saw to be used in connection with a 60″ bottom saw.'' Plaintiffs agreed to do so and wrote defendant August 29th saying they had ordered the requested parts at a cost of $525, but suggested the use of a 36″ saw instead of the requested 40″ saw. September 6, 1947, defendant accepted that proposed change of saws and thereby ratified the former agreement of purchase, including his authorization to sign his name thereto. That letter reads:

"Sept. 6, 1947

''Gentlemen:

''We have your letter of August 29 in regard to the top-saw attachment and additional head-block.

''We will use the 36″ saw instead of the 40″ saw as we first intended and approximately 60 day shipment will be all right as we intend to install the mill this winter.

Yours very truly

[Signed]    W. H. Munson.''

The machine and equipment were crated and ready for shipment, but defendant subsequently refused to accept de-

livery. This suit was then commenced to recover the agreed purchase price.

The correspondence between the parties in this case clearly constitutes a valid binding agreement for the purchase and sale of the sawmill and equipment in question. The letters from the defendant were written on his own printed letterheads, and his name was signed to each letter. The plaintiffs were led to believe they were dealing directly with the defendant himself. The letters were signed with the defendant's name, by his direct authorization. While that authorization was general and not specific as to each letter, the evidence was adequate to show his authorization. Moreover, he subsequently ratified and approved that agreement to purchase the machinery. If more definite evidence of specific authorization for the signature of the particular letter is deemed to have been required, the plaintiffs were precluded from furnishing it by the erroneous rulings of the court. The signatures of the defendant to those letters, under the circumstances of this case, fully meet the requirements of section 1624a of the Civil Code and comply with the statute of frauds, for they were signed by "his agent in that behalf." ■ Moreover, that section of the code provides that "if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply."

There is evidence in this case that the alterations and changes made in the standard machine at defendant's request rendered it unsalable to others in the ordinary course of plaintiffs' business. They testified that they tried to sell the machine as altered, and were unable to do so.

■ Nor is section 2309 of the Civil Code, upon which the defendant relies, applicable. The agreement in the form of letters to purchase the machinery was not a delegation of authority on the part of the defendant for his clerk, Mr. Miller, to "enter into a contract." The clerk testified positively that he had no such authority and exercised none; that he had nothing to do with making the contract, or with the determination of the terms thereof. That was done by the defendant himself, who dictated the terms of the contract to his clerk. The order was written on defendant's regular printed letterheads to which his name was signed by his authorization. It purported to be his personal contract. None of the subsequent communications refuted that fact. He affirmed the validity of his order and signature by sub-

sequently modifying some of the terms and by requesting certain changes in the machine and equipment. The agent did not *"enter into* a contract." The scrivener had no discretion in making that agreement to purchase the machinery. That identical question was determined adversely to defendant's contention in *Kadota Fig Assn. of Producers* v. *Case-Swayne Co.,* 73 Cal.App.2d 815, 820 [167 P.2d 523], involving the same issues which are presented on this appeal. A hearing in that case was denied by the Supreme Court. In the Kadota case the name of the authorized agent of a surety company on a bond which was prepared by the agent under his personal direction, but not signed by him, was subsequently signed by Judge Shaffer of Merced, in the name and by the request of the agent transmitted from the agent to Judge Shaffer by telephone from another city. The signature and bond were held to be valid and binding on the surety company, although the agent's name was not signed in his presence. Quoting with approval from *Sayre* v. *Nichols,* 7 Cal. 535 [68 Am.Dec. 280], this court said:

"The foregoing language applies to the present case, in which there was no attempt to delegate authority to the amanuensis to exercise discretion with respect to the provisions of the bond, but merely to authorize him to sign the agent's name to the document. It is not necessary that such authorization, merely to sign the name of an agent to a surety bond, shall be in writing. A multitude of authorities hold that an oral request to perform the mere mechanical act of signing another person's name to an instrument is valid and binding, even though the instrument is required to be in writing. Section 2309 of the Civil Code provides that:

" 'An oral authorization is sufficient for any purpose, except that an authority *to enter into a contract* required by law to be in writing can only be given by an instrument in writing. (Italics added.)'

"The present case does not involve an authorization to enter into a contract. Judge Shaffer was given no authority to enter into the contract of the surety bond. He was merely directed to sign the name of the duly authorized agent of the contracting surety company."

It follows that the mere authorization of the defendant for Mr. Miller to sign his name to the written order for the machinery was not required to be in writing by section 2309 of the Civil Code, or at all. An oral request of the defendant to

have his name signed was perfectly valid, whether the name was signed in or out of his presence.

Regarding the asserted invalidity of the signature of the defendant because he was not actually personally present when the documents were signed, this court said in the case last cited, at page 821:

". . . But we are cited to no case, and know of no authority which requires that the signature of the party shall be actually made in his presence. We are of the opinion the signature is valid and binding when the authorization to sign the instrument is conveyed directly to the amanuensis by telephone [or otherwise], as it was in this case."

There is no merit in the contention that the signature of the defendant in this case is invalid merely because he was not personally present when it was actually subscribed to the letters. The clerk was authorized to sign defendant's name just as he did in this case. The signature is valid and binding.

We are of the opinion the defendant was estopped from denying the validity of his contract to purchase the machinery by his conduct and by his request for the alterations and procuring of parts, which the plaintiff testified rendered the machine unsalable and unsuitable to other buyers in the ordinary course of the seller's business. The defendant had full knowledge of the ordering of the machinery. He himself dictated the letter ordering the machinery. He directed plaintiffs to make substantial alterations in the standard sawmill, which was done, to plaintiffs' detriment. With full knowledge of the entire transaction and of all communications, even though he thought that the clerk had signed his own name to the agreement, under the circumstances of this case he not only ratified the agreement to purchase the machinery, but he was estopped from denying that his agent was without authority to order the machinery in his behalf. (*Vanciel* v. *Kumle,* 26 Cal.2d 732 [160 P.2d 802]; *Ross* v. *Prudential Guarantee B. & L. Assn.,* 140 Cal.App. 148, 158 [35 P.2d 176]; *Walsh* v. *American Trust Co.,* 7 Cal.App.2d 654 [47 P.2d 323]; 2 C.J.S. § 296(2)(b), p. 1063.)

The judgment is reversed and the court is directed to ascertain the sum due and owing to plaintiffs and to render judgment in their favor for that amount.

Adams, P. J., and Peek, J., concurred.