[Civ. No. 31769. Second Dist., Div. Five. Oct. 28, 1968.]

UTAH HOME FIRE INSURANCE COMPANY, Plaintiff and Appellant, v. THELMA McCARTY et al., Defendants and Respondents.

Stockdale, Atkisson & Estes and George Bruggeman, Jr., for Plaintiff and Appellant.

Arthur Sherman for Defendants and Respondents.

KAUS, P. J.—The only question on this appeal is whether the Utah Home Fire Insurance Company ("Utah") did or did not furnish uninsured motorists coverage to the defendant McCarty. The trial court held that it did. We agree.

When McCarty applied to automobile liability insurance he signed an endorsement form entitled "WAIVER OF FAMILY PROTECTION OR PROTECTION AGAINST UNINSURED MOTORISTS COVERAGE." The form was then blank. When produced at the trial it read, in relevant part, as follows: "In consideration of a return premium of $—, the undersigned insured and the Company, in accordance with the provision of Section 11580.2(a) of the California Insurance Code which permits the insured and the Company so to agree, do agree that the provision of this policy covering damages for bodily injury which the insured may be entitled to recover from the owner or operator of an uninsured motor vehicle is hereby waived and is void and of no effect." The form also recites: "This endorsement, effective Sept. 19, 1964, forms a part of policy No. 68780 issued to Weddie Lee McCARTY . . ." A line providing for the signature of an "Authorized Representative" was never used. The date, the policy number, the name of the insured and the hyphens after the dollar sign were

evidently filled in by someone at Utah. This form was retained by Utah.

A little later McCarty received his policy. The face sheet contains what are commonly called the ''declarations.'' Item 3 of the declarations reads as follows: ''The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges.'' In a box below this language ten different coverages are set forth on separate lines. Premium charges appear only opposite the coverages for bodily injury and property damage liability

The body of the policy begins: ''Utah . . . [a]grees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy: . . .'' This preamble is then followed by lengthy definitions of the various coverages which would be provided by the policy if a premium were charged for the particular coverage. Part IV is entitled ''PROTECTION AGAINST UNINSURED MOTORISTS.'' It covers about fifty square inches of space.

The body of the policy also contains a space for the attachment of endorsements. None were attached when McCarty received the policy. A space for the listing of the ''form numbers'' of endorsements attached to the policy is blank. (The form number for the waiver signed by McCarty is AL 6583.) The policy is signed by an authorized representative of Utah. The court specifically found that when the policy was forwarded to and received by McCarty ''there were no endorsements attached nor separate documents received.''

It is evident that if McCarty, after receiving the policy, had tried to figure out whether he did or did not have uninsured motorists coverage he would have been a very puzzled man. When he had signed the waiver form it had told him: 1. that it was to be an endorsement to the policy; 2. that there was to be a ''return premium''; and 3. that it was to be countersigned by an ''authorized representative.'' Nothing of the sort happened.[1] As a layman he could not be expected to know that from the point of view of strict contract law these blemishes did not necessarily make his waiver ineffective. Finally, except for the preamble quoted above, there is nothing in the body of the policy to indicate that uninsured

---

[1] It seems possible that Utah's agent picked the wrong form. Language about a ''return premium'' seems more appropriate when an insured, after first receiving uninsured motorists coverage, wants to cancel it.

motorists coverage was not being furnished. The provisions describing it were not canceled or obliterated in any way.[2]

 Section 11580.2 of the Insurance Code permits the parties to delete uninsured motorists coverage "by agreement in writing." The public policy considerations which underlie section 11580.2 have been set forth elsewhere. (*Mission Ins. Co.* v. *Brown*, 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275]; *Hendricks* v. *Meritplan Ins. Co.*, 205 Cal.App.2d 133, 136-137 [22 Cal.Rptr. 682].) Absent an effective waiver, McCarty would have had the benefits of uninsured motorists coverage whether or not the policy said anything about it. An agreement deleting uninsured motorists coverage is in the nature of an agreement to exclude from coverage something which would otherwise be included as a matter of law. An exclusionary clause must be "conspicuous, plain and clear." (*Gray* v. *Zurich Ins. Co.*, 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168]; *Steven* v. *Fidelity & Cas. Co.*, 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].) The opposite is true here. The way Utah went about matters in this case created nothing but confusion. The question whether there has been an agreement to delete uninsured motorists coverage should not depend on whether a hornbook scholar can torture the parties' acts into a contract.

The judgment is affirmed.

Stephens, J., and Aiso, J. pro tem.,* concurred.

---

[2]This opinion should not be construed to mean that this factor, alone, would be sufficient to justify the result reached below. We deal with a multitude of uncertainties, all brought about by the failure of Utah to follow its own procedures.

*Assigned by the Chairman of the Judicial Council.