76 Cal.Rptr. 543]

[Civ. No. 32069.   Second Dist., Div. Two.   Jan. 16, 1969.]

ALLSTATE INSURANCE COMPANY, Plaintiff and Respondent, v. VERA MAE DEAN, Defendant and Appellant.

Milan Moacanin for Defendant and Appellant.

Dougherty, Hansen, Moore & Burch and Henry E. Kappler for Plaintiff and Respondent.

FLEMING, J.—Vera Dean appeals a judgment declaring she has no cause of action against Allstate Insurance Company and enjoining her demand for arbitration of claims arising from an automobile accident.

In March 1964 Mrs. Dean applied to Allstate for automobile insurance. Thereafter she received a document entitled Driver Exclusion Agreement which read:

"To induce the Allstate Insurance Company to issue any policy which is issued as a result of Application No. K 176174 (or to continue any policy issued as a result of such application) the undersigned hereby agrees to inclusion of an endorsement, in the policy, containing the following provisions:

"In consideration of the issuance of said policy, (or continuation of the same policy if same is already in effect) it is agreed that the Company shall not be liable and no liability or obligation of any kind shall attach to the Company as a result of an accident or occurrence while any automobile insured under the said policy is driven or operated by William C. Dean (husband).

"I further agree to the inclusion of the above endorsement in any transfer, reinstatement or renewal of said policy."

Below the place for applicant's signature was the following: "This endorsement is effective from _____, 19___,

12:01 A.M. Standard Time, and forms a part of policy number 04539009 issued to _____.

"In Witness Whereof, the Allstate Insurance Company has caused this endorsement to be signed by its president and its secretary, at Skokie, Illinois, but this endorsement shall not be binding upon the company unless countersigned by an assistant secretary or other authorized agent thereof."

Mrs. Dean signed the document on 9 April 1964, and returned it to Allstate. At no time was she furnished a copy of the document. She subsequently received a printed policy of insurance and a declaration sheet for policy number 04539009, effective 22 April 1964. The declaration sheet did not refer to exclusion of coverage for her husband, or to the document of 9 April, or to any endorsement to the policy. Nor did the printed policy consisting of 17 pages of double-column text refer to such an exclusion. Rather its final paragraph declared: "By acceptance of this policy the named insured agrees that the Declarations on the Supplemental Page are his agreements and representations, and *that this policy embodies all agreements, relating to his insurance, existing between himself and Allstate* or any of its agents." (Italics added.)

In September 1964 the insured automobile was being driven by Mrs. Dean's husband, who collided with an automobile driven by an uninsured motorist. Mrs. Dean's demand against Allstate for aribtration under the uninsured motorist coverage of her policy was enjoined by a judgment of the trial court premised on the validity of the driver exclusion agreement.

On appeal Mrs. Dean argues, and we agree, that the driver exclusion agreement had not been made part of her policy. We think the agreement, reasonably interpreted, suggests that its provisions would appear as an endorsement to a policy of insurance to be thereafter issued. While one part of the agreement states "This endorsement . . . forms a part of policy number 04539009," another part declares that the undersigned agrees to "inclusion of *an endorsement, in the policy,* containing the following provision . . ." (Italics ours.) The policy which Mrs. Dean received contained no reference to the provision she had agreed could be included. Nor did she receive a copy of the driver exclusion agreement with her policy. What she did receive was a declaration sheet which failed to mention the agreement or the endorsement to which it referred and a printed policy which stated that it embodied all existing agreements relating to the insurance. Under the language of the policy it would be difficult for a policyholder

to conclude that an agreement not attached to the policy and to which the policy did not refer had become part of the policy. The idea of a policy as an instrument in written form, whose tangible shape protects both parties to the insurance contract and acts as a check against unwarranted demands and unwarranted rejections, has been well publicized, and most persons take the view that a policy consists of what is written in it, either directly or by reference. In the absence of any restriction endorsed on the policy itself or incorporated in it by reference, Mrs. Dean was entitled to assume that the policy covered the operation of her vehicle without restriction.

We base this conclusion on two factors. First, the language of the Insurance Code itself. Section 380 defines the policy as the "written instrument, in which a contract of insurance is set forth." Section 381 requires every policy to specify the risks insured against. Section 383.5 declares that its purpose is to prevent fraud or mistake in connection with insurance of motor vehicles and requires every contract of motor vehicle insurance to be embodied in a document to be delivered to the owner, which document it defines as a policy of insurance conforming to section 381. Patently, these provisions of the Insurance Code were not followed in this case, a failure for which the insurer must bear responsibility. In *Espree* v. *Western Pioneer Ins. Co.*, 159 Cal.App.2d Supp. 875, 879-880 [324 P.2d 749], the court construed a policy of motor vehicle insurance which expressly excluded coverage for loss resulting from mechanical breakdown. Plaintiff, the equitable owner of a truck, purchased a policy from the defendant, but only received a copy of the first page of the policy, whose complete original had been sent to the lienholder. The first page did not refer to exclusion of coverage for mechanical breakdown, an exclusion which was dealt with elsewhere in the policy. The court allowed plaintiff to recover under the policy for loss caused by mechanical breakdown because it concluded that the language of section 383.5 required all provisions of the policy to be embodied in the document delivered to the insured. (See also *Frieze* v. *West American Ins. Co.*, 188 F.2d 331.)

The second factor which supports our conclusion is the principle that uncertainty or ambiguity must be resolved against the insurer and in favor of the insured. As the Supreme Court stated in *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914] : "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.]" Here, the agreement was ambig-.

uous on the question whether it was to become effective if not physically included within the policy itself. This ambiguity was compounded by the text of the policy, which stated that all existing agreements relating to the insurance were contained therein. Such ambiguities must be resolved in favor of coverage. (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra.*)

But Allstate contends that an insurer may eliminate a particular person from the coverage of a policy, either by an agreement set out in the policy or "by a separate writing." Section 11580.1 subdivision (e) of the Insurance Code provides: ". . . the insurer and any named insured may, by the terms of such policy or by a separate writing, agree that coverage under the policy shall not apply while said motor vehicles are being used by a natural person or persons designated by name. Such agreement by any named insured shall be binding upon every insured to whom such policy applies."

As we view this section, the force necessary to put it into effect lies within the word *agree,* which we interpret to refer to the consent of both parties on the substance of the exclusion and the procedure to be followed to bring it about. On the question of procedure, while Allstate may have understood that the driver exclusion document constituted an agreement by a separate writing under section 11580.1 subdivision (e), there is nothing to show that Mrs. Dean ever acquired a similar understanding. To the contrary, the document in form appears to be an assent by Mrs. Dean to the inclusion in a policy to be thereafter issued of an endorsement limiting coverage under the policy. When a limiting endorsement was not in fact included in the subsequently issued policy, it cannot be said with assurance that Allstate followed the procedure it had indicated to Mrs. Dean it would follow. We are thus brought back to an agreement which is ambiguous and uncertain on its face and to the rule of construction which applies to such agreement.

In *Utah Home Fire Ins. Co.* v. *McCarty,* 266 Cal.App.2d 892 [72 Cal.Rptr. 460], the insurer and the insured waived uninsured motorist coverage in accordance with section 11580.2, subdivision (a) of the Insurance Code. The waiver agreement recited that it formed a part of the policy, yet when the insured received his policy the agreement did not accompany it. On a subsequent claim by the insured the court held that uninsured motorist coverage was included within the policy, because the waiver agreement had neither been affixed to the policy, nor included in an endorsement, nor

forwarded to the insured with the policy. "It is evident that if McCarty, after receiving the policy, had tried to figure out whether he did or did not have uninsured motorist coverage he would have been a very puzzled man. When he signed the waiver form it had told him: 1. that it was to be an endorsement to the policy . . . Nothing of the sort happened."

The same is true in the case at bench. Additionally, the insurer solemnly declared in the final paragraph of its policy that the policy itself embodied all agreements between insurer and insured. Mrs. Dean was entitled to take Allstate at its word.

The judgment is reversed.

Roth, P. J., and Herndon, J., concurred.