[Civ. No. 11868. Fourth Dist., Div. Two. July 26, 1972.]

MARILYN DUFRESNE, Plaintiff and Respondent, v.
ELITE INSURANCE COMPANY, Defendant and Appellant.

918

**COUNSEL**

Ives, Kirwan & Dibble and John Brevidoro for Defendant and Appellant.

Sam Collins and William M. Long for Plaintiff and Respondent.

**OPINION**

**TAMURA, J.**—Plaintiff brought the present action for declaratory relief against defendant Elite Insurance Company and H. F. Bensfield Insurance Agency (agency)[1] seeking a declaration that the uninsured motorist provision of a motorcycle liability policy issued to plaintiff's deceased husband was in full force and effect at the time of the accident resulting in his death. Defendant denied uninsured motorist coverage alleging it had been waived by virtue of an exclusion agreement which formed a part of the application for insurance and which was purportedly signed by the insured.

---

[1] At the conclusion of plaintiff's case, the court granted agency's motion for dismissal.

The facts may be summarized as follows:

On March 2, 1970, plaintiff's husband purchased a motorcycle and called his insurance broker, Mr. Edwards, to obtain liability insurance coverage on the motorcycle before he drove it from the dealer's premises. Mr. Edwards testified in substance as follows: His agency represented a number of insurance companies including defendant Elite Insurance Company. When Mr. Dufresne telephoned, he (Edwards) quoted the premium charges for public liability and uninsured motorist coverage and "explained to him the uninsured motorist coverage." Mr. Dufresne stated he only wanted public liability coverage and did not want to pay the extra premium for uninsured motorist coverage. Mr. Edwards explained that a potential insured must sign a waiver of uninsured motorist coverage whereupon Mr. Dufresne requested Mr. Edwards to sign his (Dufresne's) name to the waiver agreement. An application form was completed; someone in the agency office signed Mr. Dufresne's name to the waiver agreement which appeared at the bottom of the application;[2] and the application together with a check for premium charges advanced by Mr. Edwards was forwarded to defendant. Defendant issued and sent to Mr. Edwards the insurance policy, effective as of March 2, 1970, and an endorsement waiving uninsured motorist coverage.[3]

Mr. Edwards testified he mailed both documents to the Dufresnes, but plaintiff denied they ever received the endorsement. Neither plaintiff nor her husband ever received or saw a copy of the application form.

The face of the policy contained a column for premium charges for the various possible coverages. The words "coverage waived" were typed in

---

[2]The bottom of the application form contained a place for the named insured's signature followed by the purported deletion agreement which read:

"Waiver: The Named Insured hereby agrees with the Company that the Uninsured Motorist Coverage is excluded from the policy and that the policy and any renewal thereof shall afford no coverage for damage caused by an uninsured motor vehicle under the provisions of the applicable section of the insurance code of the state in which this insurance is written.

"IF UNINSURED MOTORIST COVERAGE NOT DESIRED, NAMED INSURED SIGN HERE          X  /s/  Terry A. Dufresne".

[3]The endorsement read:

"EDORSEMENT WAIVING UNINSURED MOTORIST COVERAGE

In consideration of this policy having been issued without a premium charge for Uninsured Motorist Coverage, the named insured and the Company, in accordance with the provisions of the applicable section of the insurance code which permits the named insured and the Company so to agree, do agree that the provision of this policy covering damages for bodily injury which the insured may be entitled to recover from the owner or operator of an uninsured motor vehicle has been waived by a separate agreement and such policy provision is void and of no effect."

the column opposite coverage for "uninsured motorists." The following printed words appeared after the words "Uninsured Motorists": "Not applicable unless specific premium charge is shown on this policy." Total premium charges of $39 were shown for bodily injury and property damage liability coverages. Part III of the policy entitled "Protection Against Uninsured Motorists" was not deleted.

Plaintiff paid the $39 premium charge in March 1970. On April 19, 1970, Mr. Dufresne was killed when the insured motorcycle he was riding was involved in a collision with an uninsured motorist. Plaintiff presented a claim under the uninsured motorist provision of the policy and defendant denied coverage.

The trial court found that Mr. Dufresne did not "waive" uninsured motorist coverage and decreed that the uninsured motorist provision of the policy was in full force and effect at the time of the accident.

Defendant urges: (1) The exclusion agreement executed by someone in the broker's office on behalf of the insured effectively deleted uninsured motorist coverage; (2) the insured and all persons privy to him are estopped to deny the exclusion; and (3) the deletion agreement was ratified by the insured.

# I

We cannot agree with defendant's contention that the uninsured motorist coverage was effectively deleted by the agreement set out in the application form by virtue of its execution by someone in the broker's office on behalf of the insured pursuant to his oral authorization. Our reasons are twofold: (1) The oral authorization did not validly delegate to the broker the power to enter into the exclusion agreement on behalf of the deceased and (2) the purported agreement lacked the clarity and specificity required for an effective deletion of uninsured motorist coverage.

By the enactment of section 11580.2 of the Insurance Code the Legislature declared it to be the public policy of this state that every bodily injury liability policy issued or delivered in this state shall provide uninsured motorist coverage.[4] In furtherance of the Legislature's declared

---

[4]The pertinent provisions of section 11580.2 in effect in 1970 read as follows: "(a) No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this State to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle then principally used or principally garaged in this State, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code insuring the insured,

public policy it has been consistently held that the provisions of section 11580.2 of the Insurance Code are in effect "a part of every policy of insurance to which it is applicable to the same effect as if it was written out in full in the policy itself." (*Hendricks* v. *Meritplan Ins. Co.,* 205 Cal.App.2d 133, 136 [22 Cal.Rptr. 682]; *California Cas. Indem. Exch.* v. *Steven,* 5 Cal. App.3d 304, 306-307 [85 Cal.Rptr. 82]; *Page* v. *Insurance Co. of North America,* 256 Cal.App.2d 374, 376 [64 Cal.Rptr. 89].) The statute must be liberally construed to carry out its objective of providing financial protection for bodily injury or wrongful death caused by uninsured motorists (*Katz* v. *American Motorist Ins. Co.,* 244 Cal.App.2d 886, 891 [53 Cal. Rptr. 669]) and, as a corollary, "any exception or exclusion must be strictly construed." (*Valdez* v. *Federal Mut. Ins. Co.,* 272 Cal.App.2d 223, 227 [77 Cal.Rptr. 411].)

■ The Legislature has provided a specific method by which the otherwise mandatory uninsured motorist coverage may be excluded. Section 11580.2, subdivision (a), provides in pertinent part: "The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle. . . ." By providing a specific means of deletion, the Legislature intended to limit the manner in which it may be accomplished to that specifically provided. (*Hendricks* v. *Meritplan Ins. Co., supra,* 205 Cal.App.2d 133, 136.) An insurer's attempt to exclude uninsured motorist coverage can be effected only if there has been strict compliance with the provision of the law permitting such exclusion. (*Pechtel* v. *Universal Underwriters Ins. Co.,* 15 Cal.App.3d 194, 199 [93 Cal.Rptr. 53]; *Hendricks* v. *Meritplan Ins. Co., supra,* 205 Cal.App.2d 133, 139.)

An agreement excluding uninsured motorist coverage "is in the nature of an agreement to exclude from coverage something which would otherwise be included as a matter of law." (*Utah Home Fire Ins. Co.* v. *McCarty,* 266 Cal.App.2d 892, 895 [72 Cal.Rptr. 460].) "Only an agreement in writing which amounts to an 'effective waiver' of uninsured motorist coverage by the insured will exclude it from a liability policy for which he makes an application. (*Utah Home Fire Ins. Co.* v. *McCarty* (1968) 266 Cal.App.2d 892, 895 [citation].)" (*Bohlert* v. *Spartan Ins. Co.,* 3 Cal. App.3d 113, 118 [83 Cal.Rptr. 515].)

---

his heirs or legal representatives for all sums within such limits which he or they, . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle. Such deletion by any named insured shall be binding upon every insured to whom such policy or endorsement provisions apply. . . ."

■ In the present case the uncontradicted evidence reveals that the insured never in fact entered into the purported agreement to delete uninsured motorist coverage. The potential insured's oral authorization to the broker to sign his name to the insurance application and deletion agreement was not a valid delegation of authority to enter into the agreement on behalf of the insured. The statute provides that the deletion of coverage be "by agreement in writing." (Ins. Code, § 11580.2.) Civil Code, section 2309, commonly referred to as the equal dignities rule, provides: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."

Defendant urges that the oral authorization was not violative of the equal dignities rule, citing *Kadota Fig Assn.* v. *Case-Swayne Co.,* 73 Cal. App.2d 815 [167 P.2d 523], and *Murphy* v. *Munson,* 95 Cal.App.2d 306 [212 P.2d 603]. Those cases are merely illustrative of an exception to the equal dignities rule where an agent is orally authorized to perform the purely mechanical function of signing the principal's name to a contract whose terms have already been agreed upon. They did not involve delegation of authority to " 'enter into a contract.' " (See *Murphy* v. *Munson, supra,* 95 Cal.App.2d 306, 311; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 7, p. 112.) ■ In the present case there had been no agreement as to terms. The potential insured had never seen the purported deletion agreement nor was he otherwise apprised of its terms. In these circumstances the oral authorization to sign the insured's name could not have validly conferred on the broker the authority to *enter into* the deletion agreement on behalf of the insured. (See *O'Banion* v. *Paradiso,* 61 Cal.2d 559, 563 [39 Cal.Rptr. 370, 393 P.2d 682]; *Angus* v. *London,* 92 Cal. App.2d 282, 285 [206 P.2d 869].)

To hold that uninsured motorist coverage can be excluded by an oral authorization from a potential insured to an insurance agent to sign a deletion agreement on behalf of the insured would do violence to both the letter and the spirit of the statute as well as to the equal dignities rule. (See *Leonard* v. *Gallagher,* 235 Cal.App.2d 362, 371 [45 Cal.Rptr. 211].) It not only would invite abuses, but give rise to disputes and litigation concerning the existence of uninsured motorist coverage thereby defeating the manifest public policy that coverage is to be deemed to be provided in the absence of a clear and specific written agreement to the contrary, knowingly entered into by the insured. As the trial judge aptly observed in the present case, the statutory purpose requiring that deletion of coverage be by an agreement in writing was to avoid the kind of dispute which gave rise to this litigation.

Even if the insured had personally signed the purported "waiver" agreement, it would have been ineffective. ■ To be effective, the provision for deletion must be " 'in plain and understandable language' (*Myers* v. *National Automobile & Cas. Ins. Co.* (1967) 252 Cal.App.2d 599 [60 Cal. Rptr. 743]), and it must be conspicuous, plain and clear. (*Pechtel* v. *Universal Underwriters Ins. Co.* (1971) 15 Cal.App.3d 194 [93 Cal.Rptr. 53]; *Kincer* v. *Reserve Ins. Co.* (1970) 11 Cal.App.3d 714, 720 [90 Cal.Rptr. 94].)" (*Hagar* v. *Elite Ins. Co.*, 22 Cal.App.3d 505, 509 [99 Cal.Rptr. 423] [petition for hg. den. 2/23/72].) The agreement must be in language which will clearly and specifically apprise the insured of the nature of the right he is relinquishing. Where it is ambiguous and uncertain, it is ineffective. (*Hagar* v. *Elite Ins. Co.*, supra; *Kincer* v. *Reserve Ins. Co.*, supra, 11 Cal.App.3d 714, 719-720; *Bohlert* v. *Spartan Ins. Co.*, supra, 3 Cal.App. 3d 113, 119-120; *Allstate Ins. Co.* v. *Dean*, 269 Cal.App.2d 1, 4-5 [76 Cal.Rptr. 543]; *Utah Home Fire Ins. Co.* v *McCarty*, supra, 266 Cal.App. 2d 892, 895.)

■ In *Hagar* v. *Elite Ins. Co.*, supra, involving the same defendant, · virtually the identical deletion agreement form employed in the instant case was held to lack the clarity and specificity required for effective exclusion of uninsured motorist coverage.[5] The *Hagar* decision noted that in *Bohlert* v. *Spartan Ins. Co.*, supra, 3 Cal.App.3d 113, the court reasoned that similar language in a purported exclusion agreement was ineffective because: "Except for the bare—and, under the circumstances, wholly uninformative—reference to Insurance Code section 11580.2, the language providing that 'the policy shall afford no coverage for damage caused by an uninsured motor vehicle' does not show the prospective insured that it means damage incurred *by him;* he could readily construe it to mean coverage for damage caused *to others* by an 'uninsured motor vehicle' for whose operation he was responsible (coverage which would not have interested Bohlert if there were no such vehicle other than the motorcycle which he was presently covering against liability to others). Because the language is ambiguous to this extent, it does not—on its face—meet the standard that an agreement excluding uninsured motorist coverage must be 'conspicuous, plain and clear' to constitute an 'effective waiver' thereof [citation]." (Italics in original.) (*Bohlert* v. *Spartan Ins. Co.*, supra, 3 Cal. App.3d 113, 119.)

In *Hagar* the court not only held that the written deletion agreement

---

[5]The deletion agreement in *Hagar* v. *Elite Ins. Co.*, supra, 22 Cal.App.3d 505, at page 507, read as follows:

" 'The applicant hereby agrees with the company that the coverage of Uninsured Motorists, is excluded from the policy and that the policy shall afford no coverage for damage caused by uninsured motor vehicle under the provisions of the applicable section of the insurance code of the state in which this insurance is written.' "

was insufficient "as a matter of law" but further concluded that extrinsic evidence pertaining to the circumstances surrounding the execution of the agreement, including the minimal explanation given by the insurance agent to the insured of the nature of uninsured motorist coverage, failed to cure the deficiency in the agreement.

For the reasons expressed in *Hagar, supra,* 22 Cal.App.3d 505, we conclude that the written "waiver" agreement in the instant case would have been ineffective even if the insured had personally signed it. And here, as in *Hagar,* the meager extrinsic evidence concerning the explanation given the insured by the broker as to the meaning of uninsured motorist coverage and the purpose and effect of the "waiver" agreement did not cure the deficiency.[6] Defendant attempts to distinguish *Hagar, supra,* on the ground that the extrinsic evidence in the instant case clearly indicated the parties intended to exclude "uninsured motorist coverage." Evidence of such intent did not contribute to the clarity and specificity of the writing. There was no extrinsic evidence to show that the prospective insured's intent was expressed with a comprehension of the meaning of uninsured motorist coverage and the import of the "waiver" agreement. All we have is Mr. Edwards' conclusionary statement that he "explained to him the uninsured motorist coverage" and that the insured's signature was required to "waive the coverage." There was no evidence that the potential insured was even read the terms of the deletion agreement, much less that the language was explained to him or understood by him.

## II

Defendant urges that the insured and those in privity with him are estopped to deny the exclusion of uninsured motorist coverage because de-

---

[6]Mr. Edwards testified:

"BY MR. DIBBLE: Q. Did he say anything other than just asking for insurance?

"A. Yes, the amount of the premiums. I quoted him the public liability as well as uninsured motorist, and I explained to him the uninsured motorist coverage. He rejected the coverage because he didn't want to pay the $20 additional for it.

"Q. Did you, sir, know, or did he tell you, any reason why he was rejecting it?

"A. He only wanted to protect his driver's license, in his words, with liability coverage and nothing else.

" . . . . . . . . . . . . . .

"Q. Did you have some discussion with him concerning about how you would have to go about either obtaining or not obtaining uninsured motorist coverage with Elite?

"A. It was explained to him we needed the signature to waive the coverage, and he requested that we sign it for him, which we did, in order to be insured when he left the premises, for the liability coverage only.

"Q. Then was the application then completed on his behalf and signed after you discussed it with him?

"A. Yes, it was."

fendant issued the policy in reliance upon the application and deletion agreement which the insured authorized the broker to sign on his behalf. The contention is devoid of merit.

■ Because uninsured motorist coverage has been legislatively declared to be a matter of public policy, a deletion of coverage is not to be determined by reference to traditional rules of waiver and estoppel. (*Kincer* v. *Reserve Ins. Co., supra,* 11 Cal.App.3d 714, 719; *Lopez* v. *State Farm Fire & Cas. Co.,* 250 Cal.App.2d 210, 212 [58 Cal.Rptr. 243].) Deletion can only be accomplished by strict adherence to the method prescribed by the Legislature.

■ Nor did the retention of the policy bearing on its face the legend "coverage waived" opposite the designation "uninsured motorist" and showing no premium charge for uninsured motorist coverage constitute a waiver. The fact that the insured "examined and retained" a policy bearing such cryptic legends has been held not to constitute an effective waiver or deletion. (*Hagar* v. *Elite Ins. Co., supra,* 22 Cal.App.3d 505, 512; *Kincer* v. *Reserve Ins. Co., supra,* 11 Cal.App.3d 714, 719; see *Mission Ins. Co.* v. *Brown,* 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275]; *Lopez* v. *State Farm Fire & Cas. Co., supra,* 250 Cal.App.2d 210, 212.) The Legislature clearly intended that there be no " 'fine print,' unilateral waiver or limitation of the requirement." (*Mission Ins. Co.* v. *Brown, supra*; *Valdez* v. *Federal Mut. Ins. Co., supra,* 272 Cal.App.2d 223, 227.) The fact that no premium charge has been shown or assessed for uninsured motorist coverage does not constitute a waiver. (*Eliopulos* v. *North River Ins. Co.,* 219 Cal.App.2d 845, 850 [33 Cal.Rptr. 449].)

### III

■ Defendant's suggestion that the insured somehow ratified the broker's act of entering into the deletion agreement on his behalf is equally untenable.

Ratification requires full knowledge by the principal of all of the material facts at the time of the act of ratification. (*Chastain* v. *Belmont,* 43 Cal.2d 45, 58 [271 P.2d 498]; see Civ. Code, § 2314; 1 Witkin, Summary of Cal. Law (1960) Agency, § 46, p. 423.) The uncontradicted evidence in the instant case was that neither plaintiff nor the insured had ever received or seen a copy of the application form which contained the purported deletion agreement.

### IV

■ Finally, defendant urges that the court erred in failing to make specific findings requested by defendant that Mr. Edwards was an agent

for the insured as well as broker and agent for the defendant, that Mr. Edwards executed the deletion agreement under authorization given by the insured, that the policy was issued in accordance with the application, and that the insured received the policy before the accident. An affirmative finding on the matters requested would not have affected either the conclusions of law or the judgment. The trial court found all the facts necessary to support the judgment and to overcome the pertinent theories advanced by the defense. In these circumstances, the court was not required to find on the specific matters requested. (*Coleman Engineering Co.* v. *North American Aviation, Inc.,* 65 Cal.2d 396, 410 [55 Cal.Rptr. 1, 420 P.2d 713]; *McClung* v. *Saito,* 4 Cal.App.3d 143, 152 [84 Cal.Rptr. 44]; *Dallman Co.* v. *Southern Heater Co.,* 262 Cal.App.2d 582, 595 [68 Cal.Rptr. 873].)

Judgment is affirmed.

Gabbert, Acting P. J., and Kaufman, J., concurred.