Opinion
 

 ROUSE, J.
 

 Plaintiffs Steven and Eugene Grimes brought suit against defendants Elite Insurance Company and W. D. Forney Insurance Agency to obtain a judicial declaration that, a policy of motorcycle insurance provided plaintiffs with uninsured motorist coverage. Plaintiffs also sought an order directing defendants to arbitrate the questions of liability and damages.
 

 
 *133
 
 Defendant Elite Insurance Company filed an answer in which it admitted having issued a policy of motorcycle insurance to plaintiff Eugene Grimes. However, Elite alleged that the policy did not afford uninsured motorist coverage, since Eugene Grimes had knowingly executed a waiver of such coverage.
 

 Defendant W. D. Forney Insurance Agency filed a separate answer to the complaint, denying the charging allegations thereof and raising the defense of assumption of the risk.
 

 Elite subsequently filed a cross-complaint against W. D. Forney Insurance Agency, seeking indemnity in the event that the trial court determined that the policy of motorcycle insurance did furnish plaintiff with uninsured motorist coverage.
 

 The trial court granted the motion of defendant W. D. Forney Insurance Agency to sever the cross-complaint for trial. A jury trial was then held on the issues raised by the complaint, and the following evidence was produced: Wilfred D. Forney, testifying as an adverse witness pursuant to section 776 of the Evidence Code, stated that he was an insurance agent and that since 1964, he had owned and operated the W. D. Forney Insurance Agency, a sole proprietorship. Mr. Forney handled a number of different types of insurance and represented such insurance companies as Aetna Casualty and Life Insurance Company and defendant Elite Insurance Company. The latter company specialized in motorcycle insurance.
 

 Mr. Forney testified that plaintiff, Eugene Grimes, became his client in 1964 or 1965 when Forney sold him an Aetna policy insuring the contents of his home. Approximately one year later, Mr. Forney sold Mr. Grimes an Aetna automobile insurance policy. The Aetna policy was a “package” which automatically included uninsured motorist coverage and did not allow a waiver of same.
 

 In November 1971, Eugene Grimes telephoned Mr. Forney and stated that he wanted insurance for a motorcycle. Mr. Forney testified that he explained to Mr. Grimes that uninsured motorist coverage was optional, that it required an additional premium, and that Mr. Grimes could sign a waiver of such coverage if he wished to do so. According to Mr. Forney, Mr. Grimes told him that he only wanted liability coverage on the motorcycle and did not want uninsured motorist coverage. Mr. Forney did not consider this decision in the least unusual. He testified that
 
 *134
 
 approximately 80 percent of the clients who had purchased motorcycle insurance from him had waived uninsured motorist coverage. Mr. Forney" also testified that Mr. Grimes was a man who knew his own mind and was not receptive to Mr. Forney’s suggestions relative to insurance coverage. As an example, Mr. Forney stated that on one occasion in the past, he had increased the coverage on Mr. Grimes’ homeowner’s policy and that Grimes had objected to the increased premium and insisted upon reduced coverage.
 

 Following his telephone conversation with Mr. Grimes, Mr. Forney mailed him an application for a motorcycle insurance policy to be issued by defendant Elite Insurance Company. The application specified a premium of $51 for “Liability Only” and indicated that no premium was being charged for uninsured motorist coverage. Mr. Forney had placed two “X’s” on the application, thereby indicating where Mr. Grimes was to sign his name. One of the “X’s” was beneath the following waiver provision, which was set out in bold black print; “The Named Insured hereby agrees with the Company that the Uninsured Motorist’s Coverage is excluded from the policy and that the policy and any renewal thereof shall aiford no coverage for bodily injuries sustained by the Named Insured or any other person insured under the policy, caused by an uninsured motor vehicle under the provisions of the applicable section of the insurance code of the state in which this insurance is written. [f| If Uninsured Motorist Coverage Not Desired, Named Insured Sign Here.” Mr. Grimes signed the application in both places where Mr. Forney had placed “X’s,” and a motorcycle policy which did not include uninsured motorist coverage was issued by Elite. Mr. Grimes’ son, Steven, was listed as a principal driver covered by the policy.
 

 Eugene Grimes testified that Mr. Forney never explained uninsured motorist coverage to him, but that he understood what such coverage meant. Mr. Grimes stated that when he telephoned Mr. Forney in November 1971, he told him that he needed insurance on a motorcycle which was going to be operated by himself and his son. He asked Mr. Forney for public liability and property damage insurance, but no mention was made of uninsured motorist coverage. Mr. Grimes testified that he relied entirely on Mr. Forney’s good judgment as to what insurance coverage he should have. When Mr. Forney mailed him the insurance application, he filled in the motorcycle frame number and his son’s driver’s license number, and he signed the application where Mr. Forney had placed “X’s.” He then told his wife to write a check in the amount of $51 and mail in the application. Mr. Grimes stated that,
 
 *135
 
 although he normally read documents before signing them, he did not do so on this occasion. He denied that he ever noticed any waiver provision in the application. He did not recall thereafter receiving any insurance policy.
 

 On May 28, 1972, while the Elite policy was in full force and effect, Mr. Grimes’ son, Steven, was driving the motorcycle with his father’s consent when he was involved in a collision with an uninsured motorist. This litigation then ensued.
 

 At the conclusion of the above testimony, the trial court granted a nonsuit in favor of defendant W. D. Forney Insurance Agency and against plaintiffs. The court denied defendant Elite Insurance Company’s motion for a nonsuit or directed verdict and granted a directed verdict in favor of plaintiffs against Elite. The court based the latter ruling upon its determination that the waiver provision in the insurance application was insufficient as a matter of law, and that since Mr. Forney had never explained uninsured motorist coverage to Mr. Grimes, the latter could not be held to have knowingly waived such coverage.
 

 The trial court then ruled that Elite was not entitled to a juiy on the issues raised by its cross-complaint against W. D. Forney Insurance Agency. The court heard additional testimony by Mr. Forney to the effect that he had discussed with Mr. Grimes the premium for uninsured motorist coverage and that Grimes had stated that he wanted minimal coverage on the motorcycle. Mr. Forney also testified that Elite would have furnished uninsured motorist coverage had Grimes elected to pay the premium for such coverage.
 

 Thereafter, the trial court rendered findings of fact and conclusions of law on the cross-complaint. These findings and conclusions were to the effect that W. D. Forney Insurance Agency was the appointed agent of Elite Insurance Company and had used an insurance application form furnished by Elite; that Elite “had no policy of insurance requesting the uninsured motorist’s coverage be waived, other than providing the boxed paragraphs on its application”; that Elite did furnish motorcycle insurance with uninsured motorist coverage and that there was no evidence that the Grimes family would not qualify for uninsured motorist coverage under any operating policy of Elite; that Elite was not entitled to be indemnified by W. D. Forney Insurance Agency.
 

 
 *136
 
 Judgment was entered declaring that the motorcycle insurance policy issued by Elite did provide uninsured motorist coverage for the accident in which Steven Grimes had been involved; that Elite was required to arbitrate the question of liability and damages forthwith; and that Elite was entitled to take nothing by its cross-complaint against W. D. Forney Insurance Agency. Elite has appealed from the judgments in favor of plaintiff and Forney.
 

 Elite’s first contention on appeal is that the trial court erred in granting plaintiffs a directed verdict against Elite, thereby determining that the evidence established, as a matter of law, that there was no knowing waiver by Eugene Grimes of uninsured motorist coverage. Elite asserts that there was ample evidence which would have supported a contrary finding by the jury and that the court’s ruling was therefore improper. We have concluded that this contention is sound.
 

 The settled rules applicable to directed verdicts have been set forth by the California Supreme Court: “ ‘A . . . directed verdict may be granted “only when, disregarding conflicting evidence and giving to plaintiff’s evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.” [Citations.] Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the juiy. [Citation.]... the function of the trial court on a motion for a directed verdict is analogous to . . . that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict.’ (216 Cal. at pp. 400-401.) We have adhered consistently to the rules just set forth and have repeatedly reversed judgments entered on directed verdicts where the resisting party produced sufficient evidence to support a jury verdict in his favor.”
 
 (Dailey
 
 v.
 
 Los Angeles Unified Sch. Dist.
 
 (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360], quoting in part from
 
 Estate of Lances
 
 (1932) 216 Cal. 397, 400-401 [14 P.2d 768].)
 

 
 *137
 
 Here, there was abundant evidence to support a finding that plaintiff Eugene Grimes knowingly and deliberately waived uninsured motorist coverage on his motorcycle because he did not wish to pay the required premium for such coverage. The evidence was undisputed that, at all relevant times, Mr. Grimes understood the precise meaning of the term “uninsured motorist coverage.” He so testified, and defined the term as follows: “[I]n case you have an accident with another vehicle that is not insured, you are covered by your own insurance company for injury or anything like that.” There was testimony by Mr. Forney that he had explained to Mr. Grimes that uninsured motorist coverage was optional under the Elite motorcycle policy, that it required an additional premium, and that Grimes could sign a waiver of such coverage if he wished to do so. In addition, there was undisputed evidence that Mr. Grimes signed an insurance application which indicated on its face that he was paying a premium for “Liability Only” and was not paying a premium for uninsured motorist coverage. The insurance application contained a plainly worded waiver of uninsured motorist coverage which was signed by Mr. Grimes. Even if it be assumed that the waiver in the insurance application did not adequately define the term “uninsured motorist coverage,” it is undisputed that Mr. Grimes was in need of no such definition, since he admittedly knew what the term meant. Given this state of the evidence, Mr. Grimes’ testimony that he signed the insurance application and the waiver provision without reading them is, at best, improbable, particularly since it is apparent that he did read those portions of the application which called for the motorcycle frame number and his son’s driver’s license number and which indicated that a premium of $51 for “Liability Only” should be enclosed with the application.
 

 Under the circumstances, the question whether Mr. Grimes knowingly waived uninsured motorist coverage should not have been taken from the juiy.
 

 Plaintiffs have been able to advance no persuasive arguments to the contrary. They have suggested that because Elite made no request for findings and thereby allegedly waived same, that every intendment is in favor of the judgment and it must be presumed that the trial court found all the facts necessary to support the judgment. The difficulty with this argument is that section 632 of the Code of Civil Procedure, upon which plaintiffs rely, deals with requests for findings of fact “upon the trial of a question of fact by the court . . . .” We are not here presented with the trial of a question of fact by the court, but with a jury trial where the court undertook to grant a directed verdict and take the case from the
 
 *138
 
 juiy. The applicable test upon appellate review of such a ruling is that set forth in
 
 Dailey
 
 v.
 
 Los Angeles Unified Sch. Dist., supra,
 
 2 Cal.3d 741, previously quoted herein.
 

 Plaintiffs also rely upon
 
 Bohlert
 
 v.
 
 Spartan Ins. Co.
 
 (1969) 3 Cal.App.3d 113 [83 Cal.Rptr. 515], and
 
 Dufresne
 
 v.
 
 Elite Insurance Co.
 
 (1972) 26 Cal.App.3d 916 [103 Cal.Rptr. 347, 55 A.L.R.3d 206], as authority for the proposition that a waiver of uninsured motorist coverage is ineffective as a matter of law if neither the written waiver provision in the insurance application nor the insurance agent furnishes the insurance applicant with a sufficient explanation of the nature of uninsured motorist coverage.
 

 Both cases are readily distinguishable. In
 
 Bohlert,
 
 the plaintiff, who was 19 years old at the time and had never applied for any type of insurance before, signed a motorcycle insurance application containing a waiver of uninsured motorist coverage. There was no evidence that the insurance agent had explained uninsured motorist coverage to the plaintiff, and the waiver provision in the application likewise furnished no such explanation. The plaintiff testified that uninsured motorist coverage was never discussed and that the insurance agent directed him to sign the application where he had placed an “X” and did not allow the plaintiff to read the application form. The trial court rendered a judgment for the insurer and rejected the plaintiff’s request for a special finding of fact as to his understanding of the waiver provision in the application. The appellate court reversed the judgment for the trial court’s failure to make any finding on this material issue. In so holding, the appellate court pointed out that, in view of the insufficiency of the waiver provision in the application, the ultimate factual question was whether the plaintiff had intentionally waived a known right after knowledge of the facts; that the answer to this question depended upon the nature of the discussion between the insurance agent and the plaintiff and whether the latter understood the meaning of uninsured motorist coverage and the waiver of same. Since there was evidence to support the plaintiff’s claim of a lack of knowledge of these facts, the appellate court held that the plaintiff was entitled to a finding on the issue and that reversal was therefore required.
 

 The facts in the
 
 Bohlert
 
 case were far more favorable to the plaintiff insured than are those in the instant case. It is also noteworthy that the appellate court in
 
 Bohlert
 
 did
 
 not
 
 hold that the ineffectiveness of the waiver was established as a matter of law, but merely held that the
 
 *139
 
 plaintiff was entitled to a finding on this material factual issue. The conclusion is inescapable that if the
 
 Bohlert
 
 case involved a disputed factual question as to the existence of an effective waiver, then this case certainly presents such a situation, since there is far more evidence indicative of a knowing waiver. Plaintiff Eugene Grimes was not 19 years old, he had previously applied for and obtained uninsured motorist coverage for his automobile, he was well aware of the meaning of such coverage, he had ample opportunity to read the insurance application, and, admittedly, he did read portions of the application and, inferably, all of the application. Given these facts, the
 
 Bohlert
 
 case does not support plaintiffs’ position.
 

 Dufresne
 
 v.
 
 Elite Insurance Co., supra,
 
 26 Cal.App.3d 916, furnishes no better support for plaintiffs’ position. That case involved a declaratory relief action brought against the insurer by the wife of an individual who had been killed in a motorcycle collision with an uninsured motorist. Since death had rendered the insured unavailable as a witness, the only testimony concerning the insurance application was that of the insurance broker, who stated that the decedent had telephoned him and had orally authorized him to sign his name to a motorcycle insurance application which contained a waiver of uninsured motorist coverage. Thereafter, someone in the insurance broker’s office signed the decedent’s name to the waiver and the premium was advanced by the broker and mailed to the insurer. Neither the decedent or his wife ever saw the application form, and she testified that they never received the endorsement. In affirming a judgment determining that there had been no effective waiver of uninsured motorist coverage, the appellate court held that the decedent could not orally authorize another to sign the waiver agreement on his behalf. The court further stated that even if the decedent had personally signed the waiver provision, it would have been ineffective because such provision did not contain an adequate explanation of uninsured motorist coverage and “[tjhere was no extrinsic evidence to show that the prospective insured’s intent was expressed with a comprehension of the meaning of uninsured motorist coverage and the import of the ‘waiver’ agreement.” (P. 925.)
 

 In this instance, the record does contain the evidence found lacking in the
 
 Dufresne
 
 case. We find that there was sufficient evidence of an effective waiver of uninsured motorist coverage to allow the case to go to the jury; therefore, the granting of a directed verdict was improper.
 

 
 *140
 
 Elite’s remaining contentions on appeal are that the trial court failed to make findings on certain material issues raised in Elite’s cross-complaint against W. D. Forney Insurance Agency, and that the trial court improperly deprived Elite of a jury trial on said cross-complaint.
 

 Since we have concluded that the trial court erred in granting plaintiffs a directed verdict against Elite and that the judgment in favor of plaintiffs and against Elite must be reversed, there exists the possibility that plaintiffs may not prevail against Elite upon retrial, in which event it would be unnecessary for us to determine the issues raised by Elite’s cross-complaint. On the other hand, it is equally possible that, upon retrial, the jury might return a verdict in favor of plaintiffs and against Elite. For example, even though it was undisputed that Eugene Grimes understood the meaning of uninsured motorist coverage, a jury might still believe his testimony that Mr. Forney never discussed uninsured motorist coverage with him or the option of waiving such coverage, that he relied entirely upon Forney to recommend adequate coverage for him, that he signed the insurance application where marked by Forney without reading the waiver provision, hence that he did not knowingly waive uninsured motorist coverage. Given such a verdict, Elite’s right to prevail on its cross-complaint against W. D. Forney Insurance Agency would then be in issue.
 

 The crux of Elite’s cross-complaint is found in the allegations that, in the event that plaintiffs were found to have obtained uninsured motorist coverage from Elite, “then such coverage would have been the product of the failure of defendant W. D. Forney Insurance Agency to properly advise . . . and inform Gene Grimes what the effect of the waiver which [he] signed on his application to [Elite]. . . would be”; further, “[t]hat in such event, defendant W. D. Forney Insurance [Agency] would have breached its responsibilities to [Elite] in failing to exercise that degree of care which [Elite] could reasonably expect independent, professional insurance agents to exercise when obtaining applications for insurance coverage from members of the general public.” Elite sought a judgment that W. D. Forney Insurance Agency was required to indemnify it for any damages which Elite might sustain as a result of the uninsured motorist coverage in favor of plaintiffs.
 

 A review of the trial court’s findings of fact and conclusions of law on the cross-complaint shows that the court determined only that W. D. Forney Insurance Agency was Elite’s authorized agent and used an insurance application form furnished by Elite; that Elite did offer
 
 *141
 
 motorcycle insurance with uninsured motorist coverage and that the Grimes family would have qualified for such coverage. These findings were inadequate to dispose of the issues raised by the cross-complaint. The finding that W. D. Forney Insurance Agency used an application form furnished by Elite is of no significance in the absence of a finding that the waiver provision set forth therein was deficient. The court made no such finding. Even if the court had found that the waiver provision did not adequately define uninsured motorist coverage, the fact remains that Eugene Grimes was in need of no such definition. For that reason, plaintiffs’ right to recover against Elite and Elite’s right to indemnity against W. D. Forney Insurance Agency were both dependent upon proof of Mr. Forney’s failure to adequately discuss with Mr. Grimes uninsured motorist coverage and the waiver of same. Thus, it was essential that the trial court determine whether or not Mr. Forney breached his duty in this regard. Elite specifically requested such a finding, hence cannot be deemed to have waived same.
 

 We are also of the opinion that Elite was improperly deprived of a jury trial on its cross-complaint. In
 
 Alisal Sanitary Dist.
 
 v.
 
 Kennedy
 
 (1960) 180 Cal.App.2d 69 [4 Cal.Rptr. 379], the plaintiff was a sanitary district which had engaged the defendants to do engineering work. It was alleged that due to the negligent performance of this work, the plaintiff was required to pay damages to injured third parties. The appellate court held that the plaintiff’s complaint against the defendants stated a cause of action based upon the theory that the defendants had breached the obligation to perform the work in a skillful and careful manner and that the breach of said obligation resulted in a duty to indemnify the plaintiff against foreseeable damages caused by the defendants’ negligent performance. (P. 79.) The court further held that “The nature and scope of the relationship between the plaintiff and the defendants; the obligations owing by one to the other; the extent of the participation of the plaintiff in the affirmative acts of negligence; the physical connection of the plaintiff, if any, with the defendants’ acts of negligence by knowledge or acquiescence; or the failure of the plaintiff to perform some duty it may have undertaken by virtue of its
 
 agreement—are all questions of fact that should be left to the jury.”
 
 (Pp. 79-80; italics added.)
 

 Since the cause of action alleged in Elite’s cross-complaint is essentially the same as that alleged in the
 
 Alisal
 
 case, Elite should be entitled, upon remand, to have its cross-complaint heard by a jury.
 

 
 *142
 
 Defendant W. D. Forney Insurance Agency argues that, since the prayer of Elite’s cross-complaint seeks a “declaration of this court . . . that defendant W. D. Forney Insurance [Agency] be required to indemnify and save harmless Elite,” the cross-complaint was for declaratory relief, an equitable remedy, hence Elite was not entitled to a jury as a matter of right. This argument overlooks the rule that if the issues raised by a pleading are of the type that would be triable by a jury, the right to a jury may not be defeated by the fact that the pleading seeks declaratory rather than coercive relief.
 
 (State Farm etc. Ins. Co.
 
 v.
 
 Superior Court
 
 (1956) 47 Cal.2d 428, 431-432 [304 P.2d 13].) In any event, since the reversal of a judgment sets the case at large for a retrial, either party normally has the right to file amended pleadings.
 
 (Bank of America
 
 v.
 
 Superior Court
 
 (1942) 20 Cal.2d 697, 702 [128 P.2d 357].)
 

 The judgment for plaintiffs Grimes and against defendant Elite is reversed. The judgment on the cross-complaint in favor of Forney and against Elite is reversed.
 

 Taylor, P. J., and Kane, J., concurred.